UNITED STATES of America, Appellee,

v.

Edward James DUPREE, Appellant.

No. 76–2038.

United States Court of Appeals,
Eighth Circuit.

Submitted March 14, 1977.

Decided May 11, 1977.

T. Scott Richardson, Jr., St. Louis, Mo., argued and filed on brief, for appellant.

David M. Rosen, Asst. U. S. Atty., (argued), Barry A. Short, U. S. Atty., St. Louis, Mo., on brief, for appellee.

Before VAN OOSTERHOUT, Senior Circuit Judge, BRIGHT and ROSS, Circuit Judges.

VAN OOSTERHOUT, Senior Circuit Judge.

Defendant Edward James Dupree has taken this timely appeal from his conviction by a jury upon an indictment charging him with attempted extortion in interference with interstate commerce by threats of violence, in violation of 18 U.S.C. § 1951, and the resulting sentence imposed of ten years imprisonment.

Errors relied upon for reversal are:

I. Refusal of mistrial motion for failure of Government to produce original logs of F.B.I. officer surveiling defendant's movements, which logs had been destroyed pursuant to the then prevailing F.B.I. policy after comparing the notes with the agent's typewritten 302 report.

II. Refusal to suppress voice identification testimony.

We find such contentions to be without merit and affirm the conviction for the reasons hereinafter stated.

Defendant concedes that the evidence is adequate to support his conviction. We agree. Defendant attacks the quality of the Government's evidence. Since the strength of the Government's case has a bearing on whether the asserted errors, if established, are prejudicial, a summary of the evidence is appropriate.

Ms. Minzes, receptionist and telephone operator at the National Foods testified that defendant entered National Food's office about 11:00 a. m. on July 1, 1976, and asked her where to go to make an employment application. Later he came back and inquired as to the location of the men's room. Ms. Minzes identified the defendant as the person making the inquiries. She noted his slurring of words and his mannerism in speaking. Later she recognized the voice of defendant on two telephone conversations hereinafter described.

In the first telephone conversation, defendant asked to speak to the head supervisor. She recognized the voice as that of the defendant. Defendant was connected with Ms. Vohsen, the secretary of the manager. Defendant told Ms. Vohsen to send someone to the men's room to pick up a letter left under the trash can and that he would call back. Upon receiving this information, the supervisor went to the men's room and picked up the letter, which in substance advised that high explosive charges had been placed in eight National stores and that they could be safely exploded from a safe distance, and would be exploded unless National made a $250,000.00 loan which would not be repaid, and further advised that further instructions would be provided by telephone.

The F.B.I. was immediately summoned and promptly came to National Foods and with National Foods' permission installed a tap and recording device on the telephone. The telephone company was alerted and cooperated. From the tap it was determined that three subsequent calls relating to payment of the money came from three places—the Hook-up Cafeteria, Golden Slipper and defendant's mother's residence, all located in the same general area. Upon first learning the general area of the originating calls, the F.B.I. flooded the area with agents, providing them with a description of the defendant. Agent Weldy testified that at the time the calls were being placed he observed the defendant enter and leave the Hook-up Cafeteria and the Golden Slipper, that a log was kept and that defendant was in such places at the time the threatening calls were received at National Foods. The surveiling agents were kept advised by radio with respect to incoming calls at National Foods and other developments.

On July 2, 1976, defendant at the request of the F.B.I. voluntarily reported for questioning. He was not under arrest. After receiving *Miranda* warnings, he told Agent Hess that he did in fact take the envelope to National Foods but stated he did so at the request of one Marvin Johnson who paid him $20.00 and stated that the en-

velope contained LSD for a National employee.

The extortion note was contained in a sealed envelope. Defendant's fingerprints were found on the enclosed note. Defendant's reading of the telephone dialogue was recorded on tape, as was a similar reading of the same matter by four other Negroes of approximately defendant's age. Defendant's voice was identified by three employees interviewed separately who had heard defendant's follow-up calls, including Ms. Minzes who had talked with the defendant as hereinabove related.

## I.

▮ Defendant, relying on *United States v. Harrison*, 173 U.S.App.D.C. 260, 524 F.2d 421 (1975), and *United States v. Harris*, 543 F.2d 1247 (9th Cir. 1976), asserts prejudicial error was committed by reason of the inability of the Government to produce the original logs of the surveiling officer. Each of these cases holds that upon proper request a defendant may be entitled to the handwritten logs of F.B.I. agents which contain notes of interviews conducted by the agents with defendant or witnesses, and that such original notes were improperly destroyed.

Defendant made no request for the logs prior to his motion for mistrial. Defendant's counsel had prior to trial been permitted to examine the Government's file, including the agent's typewritten statement prepared from the notes. The Government stated that according to the prevailing F.B.I. policy agents' logs were destroyed after a typewritten report was prepared and compared with the notes.[1]

In *United States v. Mechanic*, 454 F.2d 849, 857 (8th Cir. 1971), the court held that the trial court committed no error in denying defendant access to the agent's handwritten logs which were destroyed in good faith and in the normal procedure after being substantially incorporated in the agent's report.

In *United States v. Roell*, 487 F.2d 395, 401 (8th Cir. 1973), we held notes made by the agent during an investigation were not discoverable under Fed.R.Crim.P. 16(b) or the Jencks Act, 18 U.S.C. § 3500.

Defendant does not charge bad faith in the destruction of the notes and points to no reasonable likelihood that the typewritten notes produced vary from the original notes.

Defendant points out that *Harris* and *Harrison* were decided subsequent to our decisions just cited and that we should reexamine the issue in the light of these decisions. We find it unnecessary and undesirable to do so on the present record. In both *Harris* and *Harrison* the convictions were affirmed. The courts determined that no substantial rights of the defendant were affected by the destruction of the rough notes and that any error committed was harmless error. In our present case, our summary of the facts hereinabove demonstrates that the Government had made a strong case for conviction. We are satisfied that no prejudicial error was committed by reason of the government's inability to produce the agent's rough notes.

## II.

Defendant contends the court erred in denying his motion to suppress the voice identification testimony upon the grounds that (a) the voice spread was impermissibly suggestive, and (b) defendant was denied assistance of counsel at the time the voice spread was played for the witnesses.

▮ Defendant, a Negro, voluntarily read from the transcript of the telephone threats which were recorded. The voices of four other Negroes of similar age made recordings of the same transcript. These were played out of the presence of the defendant to three National employees, Ms. Minzes, Mrs. Vohsen and Mr. Cross, all of whom had heard defendant's telephone con-

---

1. At oral argument Government counsel stated that the F.B.I. has now changed its policy and preserves the original notes.

versations. Only Ms. Minzes had personally seen and conversed with defendant. Each witness listened to the tape separately and there was no communication with each other before they made the identification of defendant's voice. The witnesses were not told that the voice of the extortionist was on the tapes. Defendant's motion to suppress the voice identification testimony upon the ground that the voice spread was impermissibly suggestive was overruled after the trial court had listened to the tapes and conducted an evidentiary hearing. In support of such ruling, the court, among other things, stated:

> With regard to this voice situation, again, he was given his Miranda warnings and volunteered to give his voice. The taping procedure followed, it seemed to me to be fair, and certainly not unduly or impermissibly suggestive. The only voice that sounded a little bit different was the last one, a little more careful than you say Mr. Dupree's did, Mr. Richardson, so it's obvious we've got a pretty good fact question there.
>
> I will find that the defendant's Fifth Amendment and other constitutional rights were not violated with regard to the procedure used in the use of the voice tapes, and the procedure that followed.

Such determination is supported by the record and is not clearly erroneous.

Defendant's second contention that he was wrongly denied assistance of counsel when the voice spread was played for the witnesses lacks merit. While defendant was under investigation at the time, he had not been arrested or indicted.

No cases have been cited in support of the right to have counsel at the playing of a voice array. In the analogous situation of photographic array, it has been held the defendant has no right to have counsel present. This is because the defendant is not present at the array and hence none of the constitutional reasons for presence of counsel exist. *United States v. Ash*, 413 U.S. 300, 317, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973); *United States v. Bennett*, 409 F.2d 888, 898–900 (2d Cir. 1969).

The defendant has had a fair trial. No prejudicial error was committed by the trial court. The judgment of conviction is affirmed.