[Crim. No. 11698. Fourth Dist., Div. One. June 5, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
CLAUDE LEE REESE, Defendant and Appellant.

## COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Jeffrey J. Stuetz, Deputy State Public Defender, and John M. Bishop for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Jay M. Bloom and Robert M. Foster, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

LANGFORD, J.*—Claude Lee Reese appeals from a judgment of conviction of one count of rape (Pen. Code,[1] § 261) and one count of first degree burglary (§ 459). He was sentenced to state prison for the middle term of six years for the rape. The burglary sentence was stayed pursuant to section 654. He contends receipt of evidence of a voice lineup violated his right to counsel at that lineup in violation of the Sixth and Fourteenth Amendments to the United States Constitution and article I, section 15 of the California Constitution, and that the trial court's rejection of defense scientific evidence was based on reasons inconsistent with the evidence.

On August 28, 1979, Valerie was raped in her home. She saw only her assailant's hand, which was black, but she heard his voice. The next morning she recalled the voice as being that of defendant Claude Lee Reese, a patient at a psychiatric board and care facility where she had worked. Reese was a patient between July 1977 and September 1978 for a period of one or two months before running away. Valerie had encountered him again at the hospital in June or July 1979.

On the afternoon of August 31, 1979, while the police were still looking for Reese, she encountered him on the street. She saw him jumping up and down and heard him say in a mocking tone of voice, "he attacked me."

---

*Assigned by the Chairperson of the Judicial Council.
[1]All references are to the Penal Code unless otherwise specified.

Reese was arrested on August 31. On September 4 the complaint was filed. On September 5 Valerie identified defendant Reese's voice in a voice lineup at which she did not see the participants. Reese was arraigned on the complaint on September 6, 1979.

During the noon recess of the trial on January 3, 1980, a deputy heard Reese raising a ruckus in his cell. He was singing, yelling and screaming, yelling at people who were not there. At some points he would scream to God asking God for help. When the deputy told Reese to be quiet, he stated that he had "raped that white woman."[2]

The defense called the police department criminalist and a private expert on the same subject. Valerie is a type A secreter, while Reese is a type B secreter. Secreters' body fluids can be typed according to their blood type. Swabs from Valerie's vagina indicated type A, but not type B. In view of the amount of semen shown by a phosphatase test he ran, the private expert would be surprised not to find type B, if Valerie had had intercourse with a type B secreter. The police expert was not surprised, attributing the absence of type B to insufficient semen or the masking effect of the type A fluids. The trial judge accepted the police criminalist's conclusion, relying in part on, "the long experience of 2,000 cases that have been investigated." There was no evidence in the record 2,000 cases had been investigated.

■ The starting point of our consideration of the question of Reese's right to counsel at the voice lineup is the holding in *Kirby v. Illinois* (1972) 406 U.S. 682 [32 L.Ed.2d 411, 92 S.Ct. 1877], that the right to counsel at pretrial lineup afforded in *United States v. Wade* (1967) 388 U.S. 218 [18 L.Ed. 2d 1149, 87 S.Ct. 1926] and *Gilbert v. California* (1967) 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct. 1951], is limited to lineups conducted after the initiation of judicial criminal proceedings. Although in *Kirby*, at page 689 [32 L.Ed.2d at page 417], the court had referred to the "initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information or arraignment," the *Kirby* decision was widely interpreted as limiting the right to counsel in postindictment lineups. In *Moore v. Illinois* (1977) 434 U.S. 220 [54 L.Ed.2d 424, 98 S.Ct. 458], the United States Supreme Court rejected that interpretation, saying, at page 228 [54 L.Ed.2d at page 433]: "Such a reading cannot be

---

[2]This testimony was received without objection by the defense and without a hearing as to voluntariness.

squared with *Kirby* itself, which held that an accused's rights under *Wade* and *Gilbert* attach to identifications conducted 'at or after the initiation of adversary judicial criminal proceedings,' including proceedings instituted 'by way of formal charge [or] preliminary hearing.' 406 U.S., at 689. The prosecution in this case was commenced under Illinois law when the victim's complaint was filed in court. See Ill. Rev. Stat., ch. 38, § 111 (1975)."

Illinois Statutes, chapter 38, section 111-1, provides: "When authorized by law a prosecution may be commenced by: (a) a complaint; (b) an information; (c) an indictment." Section 111-2 provides, inter alia, that all prosecutions of felonies shall be by information or indictment, and that no prosecution may proceed by information unless a preliminary hearing has been held or waived. All other prosecutions may be by indictment, information or complaint.

California Penal Code section 691, subdivision 4, contains the following definition: "The words 'accusatory pleading' include an indictment, an information, an accusation, a complaint filed with a magistrate charging a public offense of which the superior court has original trial jurisdiction, and a complaint filed with an inferior court charging a public offense of which such inferior court has original trial jurisdiction."

Section 738 provides: "Before an information is filed there must be a preliminary examination of the case against the defendant and an order holding him to answer made under Section 872. The proceeding for a preliminary examination must be *commenced* by a written complaint, as provided elsewhere in this code." (Italics added.)

The California procedure is indistinguishable from the Illinois process considered by the Supreme Court in *Moore.* The filing of a felony complaint in California starts the criminal proceeding, just as the United States Supreme Court held it did in Illinois.

The enumeration in *Kirby* and *Moore* of events which will start a criminal prosecution is in the disjunctive. The return of an indictment or the filing of an information invokes the right to counsel, even before the defendant is arraigned. The filing of any other accusatory pleading, as defined in section 691, subdivision 4, has the same effect. If an arraignment occurs before the filing of charges, that event will invoke the right.

The use of arraignment as the starting point of a criminal prosecution would invite additional problems exemplified by *People* v. *Williams* (1977) 68 Cal.App.3d 36 [137 Cal.Rptr. 70], and the case at bench. In *People* v. *Powell* (1967) 67 Cal.2d 32, 59 [59 Cal.Rptr. 817, 429 P.2d 137], our Supreme Court said: "Penal Code section 849, subdivision (a), has provided in substance since 1872 that 'When an arrest is made without a warrant by a peace officer or private person, the person arrested, if not otherwise released, must, *without unnecessary delay*, be taken before the nearest or most accessible magistrate in the county in which the offense is triable, and a complaint stating the charge against the arrested person, must be laid before such magistrate.' (Italics added.) (See also Pen. Code, § 859.) More specifically yet, since 1927 Penal Code section 825 has provided that 'The defendant must in all cases be taken before the magistrate without unnecessary delay, and in any event, *within two days after his arrest*, excluding Sundays and holidays; . . .' (Italics added.) [Fn. omitted.]" (The italics is inserted by *Powell*.)

In the case at bench the defendant was arrested at about 3 p.m. on Friday, August 31. Under section 825 he should have been arraigned the following Tuesday, September 4, the date the complaint was filed. Instead, he was taken to a voice lineup on the 5th and only arraigned on the 6th. Under the teaching of *People* v. *Williams, supra*, 68 Cal.App. 3d 36, 42, these circumstances would preclude introduction into evidence of identification of the defendant, even if no complaint had been filed. Since arraignment delay was not raised in the trial court or on appeal as an independent ground for relief, the question is not directly before us. Nevertheless, these circumstances demonstrate the impropriety of requiring an arraignment in addition to the filing of an accusatory pleading as a prerequisite to the right to counsel.

The Attorney General argues that, even if defendant Reese would have been entitled to counsel at a visual lineup, an auditory lineup is not a critical stage of the proceedings and hence there was no right to counsel. We are unable to accept the distinction the Attorney General seeks to draw between a live visual lineup and a live auditory lineup. The benefits of the presence of counsel are the same in both cases. The attorney could appraise the difference or similarity of the voices presented and protest if his client's was suggestively dissimilar. In this case counsel might well have advocated the presentation of a "blank" lineup to Valerie, or at least the indication to her that the lineup might be blank, so as to dispel her preconception that Reese's voice would be

among those she would hear. Even if none of his suggestions were adopted, defense counsel would have been present to know the details of what occurred, so that he would be in a position to more effectively cross-examine.

The attempt to analogize the voice lineup with a photographic lineup is unpersuasive. The appropriate analogy would be between a photographic lineup and a recorded voice lineup. The crucial distinction between a live lineup and a photo lineup is that the photo lineup can be reproduced in court, so the trier of fact can determine its suggestiveness. A live voice lineup cannot similarly be reproduced, because the other voices are unavailable for the trier of fact to hear.

The right to counsel at a live voice lineup is the same as at a live visual lineup.· ■ The introduction in the case at bench of evidence of such a postcomplaint voice lineup at which defendant was not afforded the right to counsel violated the Sixth and Fourteenth Amendments of the United States Constitution as construed in *Moore* v. *Illinois, supra*, 434 U.S. 220. We would reach the same result under article I, section 15 of the California Constitution.

■ The error in admitting the evidence was harmless beyond a reasonable doubt. (*Chapman* v. *California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065].) This case did not turn upon the credibility as direct evidence of Valerie's belated identification of the voice of her assailant. The voice identification was a circumstance which produced a suspect. The true basis of the conviction is the remarkable twist, that the suspect would turn out to be someone who would taunt Valerie as his accuser, before he knew he had been accused, and who would confess to the crime. Valerie's ability to repeat his voice identification could have no substantial impact on this combination of circumstances. Without the erroneously admitted evidence, the result would unquestionably be the same.

Finally, Reese contends the conviction should be reversed because the trial court misunderstood the scientific evidence presented by the defense and relied upon evidence not presented in court. As to the first aspect of this issue, we are without the power to intervene. The two experts called by the defense simply differ as to the significance of the absence of type B secretions in the swabs taken from Valerie after the rape. Resolution of this conflict, the weight to be given the scientific

evidence, and its interpretation and evaluation, are matters for the trier of fact.

A more serious question is presented by the trial court's statement he was influenced in his evaluation of the scientific evidence, "because of the long experience of 2,000 cases that have been investigated," when there is no evidence in the record that 2,000 cases have been investigated. We do not interpret this remark as does Reese. It appears to signify that there is a body of scientific knowledge based upon 2,000 cases, either in the literature or in the police laboratory, not that either expert had done that number of analyses. The statement, however, is ambiguous.

The trial court's remark raises the basically insolvable problem of drawing a line between general experience of the trier of fact and evidence taken out of court. At the junction between these categories is matter of which a court may take judicial notice. The 2,000 cases may be beyond dispute and either of common knowledge within the jurisdiction of the court, or capable of immediate verification, within the meaning of Evidence Code section 452, subdivisions (g) and (h). Defense counsel may have been familiar with the testimony of these professional witnesses and the factual basis for the court's comment, and concluded his client would not benefit from making an issue of it. Under Evidence Code section 455, the trial court should have announced its intent to take judicial notice before its decision, instead of during it. Nevertheless, it was incumbent upon Reese to object to reliance upon the 2,000 cases and seek an opportunity for rebuttal. His failure to raise the issue in the trial court precludes its consideration for the first time on appeal. (§ 1259.)

Judgment affirmed.

Cologne, Acting P. J., and Work, J., concurred.

A petition for a rehearing was denied June 23, 1981, and appellant's petition for a hearing by the Supreme Court was denied September 10, 1981.