502 A.2d 1084

**Robert Armstrong WHITE**

v.

**STATE of Maryland.**

**No. 457, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

Jan. 14, 1986.

Michael R. Braudes, Asst. Public Defender (Alan H. Murrell, Public Defender, on brief), Baltimore, for appellant.

Jillyn K. Schulze, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., Baltimore, Andrew L. Sonner, State's Atty. for Montgomery County, and Robert L. Dean, Asst. State's Atty. for Montgomery County, on brief), Rockville, for appellee.

Submitted before WEANT, BISHOP and GARRITY, JJ.

BISHOP, Judge.

Appellant Robert Armstrong White was convicted by a jury in the Circuit Court for Montgomery County, of first degree rape, robbery with a deadly weapon, burglary, and carrying a concealed weapon. He was sentenced for these convictions and an unrelated arson conviction to a term of life plus fifty years.

Appellant raises the following issues:

I. Did the trial court err by:

A. Failing to suppress introduction of the pre-trial voice identification because appellant and his counsel were not present at an audio tape replay of the voice line-up;

B. Limiting appellant's cross-examination with reference to police visual line-up guidelines;

C. Not allowing appellant to introduce the remainder of an article written by appellant's voice identification expert, a portion of which the State read in the voir dire; and

D. Limiting the scope of appellant's voice identification expert's testimony?

II. Did the trial court err in permitting a State rebuttal expert witness to testify after the expert was present in the courtroom during prior testimony, despite a general witness exclusion order?

III. Did the trial court err in allowing the prosecutor to read to the jury during closing argument from reported opinions of Maryland appellate courts?

## FACTS

On May 15, 1984 the victim was accosted in her bedroom by an intruder who held a sharp object to her neck and ordered her to keep her head down. The intruder proceeded to rob and rape the victim who was not able to see the intruder's face during the approximately twenty minute ordeal, but did hear him speak extensively and was able to

notice that he was wearing red sweat pants and white tennis shoes.

Shortly after the victim reported the incident, appellant, wearing red sweat pants and white tennis shoes, was apprehended by police officers in the vicinity of the victim's home. When he was approached by the police appellant gave his brother's name, and, in a subsequent search, the police recovered a razor, a nail clipper, and a nunchaku [1] from appellant's person. On May 22, 1984 the police held a "live" voice line-up during which the victim narrowed her selection down to appellant and one other individual. Over two months later, on July 30, 1984, after listening to an audio tape of the voice line-up, the victim identified appellant's voice as that of her assailant. Neither appellant nor his attorney was present at the audio tape replay.

Pretrial, appellant unsuccessfully moved to suppress the results of the voice identification. At trial, the State presented an audio-video tape of the voice line-up to the jury. Appellant presented a voice identification expert witness who was allowed to testify as to general standards to measure accuracy in voice identification. Appellant also presented an expert who testified that a sperm sample taken from the victim did not match a sperm sample given by appellant. The State presented expert rebuttal testimony on this issue.

## I.

### Voice Identification

Four issues are raised related to the pretrial voice identification. Appellant first asserts a right to counsel violation; second he alleges error in the trial court's limitation of the

---

1. A nunchaku is categorized as a deadly weapon by the concealed weapons statute. *See* Md.Ann.Code Art. 27, § 36(a). A nunchaku is defined in Art. 27, § 36(c) as:

   [A] device consisting of two pieces of wood, metal, plastic, or other like substance connected by any chain, rope, leather or other flexible material not exceeding 24 inches.

scope of defense counsel's cross-examination with reference to police visual line-up guidelines; third he claims the court erred in preventing the reading of a portion of an article read by the prosecutor during the *voir dire* of his voice identification expert; and fourth he alleges error in the trial court's limitation of his voice identification expert's testimony.

## A.

### *Presence of Appellant and Counsel at Voice Line-up*

At the first of the two voice line-ups, with both appellant and his attorney present, five police officers and appellant stood behind the victim and each in turn read a series of threats which the assailant had used. Each participant also read a passage taken from the Washington Post. The victim chose as possibilities the voices of appellant and one other participant. On July 30, 1984 at the audio tape replay, appellant or counsel not being present, the victim identified appellant's voice as that of her assailant.

Appellant, analogizing to post-indictment line-up cases, asserts that the absence of his attorney at the audio tape replay violated the right to counsel and further argues that the lack of his presence at the "critical stage" of the replay violates fundamental fairness. For these reasons, appellant contends that the trial court should have suppressed the results of the voice identification procedure.

In our review of the denial of a pretrial suppression motion under Rule 4–252, we must consider the record of the suppression hearing only and not the record of the trial itself. *Jackson v. State,* 52 Md.App. 327, n. 5, 449 A.2d 438, *cert. denied,* 294 Md. 652 (1982). The State asserts that the absence of the defendant and the lack of counsel at the audio replay were not raised in the trial court. The State is partially correct. Neither point was raised at the suppression hearing itself, but lack of counsel was raised in the written suppression motion. Although we will not consider the issue of whether appellant had a right to be present at

the playing of the tape, Rule 1085, we will consider the right to counsel issue.

Although appellant was not indicted before the "live" voice line-up he was indicted before the tape replay. The Sixth Amendment right to counsel attached at that time. *Kirby v. Illinois,* 406 U.S. 682, 689–90, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972). The issue is whether the Sixth Amendment requires counsel to be present at the replaying of a taped voice line-up. Appellant cites out of state authority holding that a criminal defendant has a right to counsel during a voice line-up. Appellant also analogizes to post-indictment visual line-up cases which clearly set forth the rule that the Sixth Amendment requires counsel to be present at a visual line-up. *See Gilbert v. California,* 388 U.S. 263, 272, 87 S.Ct. 1951, 1956, 18 L.Ed.2d 1178 (1967); *United States v. Wade,* 388 U.S. 218, 236–37, 87 S.Ct. 1926, 1937, 18 L.Ed.2d 1149 (1967). The State analogizes to photo array cases where it is equally clear that there is no right to have counsel present at that pretrial procedure. *See United States v. Ash,* 413 U.S. 300, 321, 93 S.Ct. 2568, 2579, 37 L.Ed.2d 619 (1973).

Two factors compelled the Supreme Court to require counsel's presence at a visual line-up. First, the trial-like confrontation between the victim and the defendant, *Ash,* 413 U.S. at 314, 93 S.Ct. at 2576; *Wade,* 388 U.S. at 228–30, 87 S.Ct. at 1932–34, and second, line-up procedures could not be reproduced at trial for defense counsel to challenge them adequately, so counsel needed to be present to observe the actual procedure. *Ash,* 413 U.S. at 316, 93 S.Ct. at 2577; *Wade,* 388 U.S. at 236–37, 87 S.Ct. at 1937. The absence of these two problems in the photo array context caused the Supreme Court not to require defense counsel's presence in a post-indictment photo identification procedure. *Ash,* 413 U.S. at 317–21, 93 S.Ct. at 2577–79.

There are no post-*Gilbert/Wade* Maryland cases which deal with the right to counsel at a voice identification

**108**

procedure.[2] A majority of other states and the federal courts have held that a criminal defendant has no right to have counsel present at a voice line-up procedure.[3] The issue presented to us here is not the right to counsel at the "live" voice line-up, but rather at the taped replay. The "live" voice line-up situation is arguably analogous to a "live" visual line-up. The taped replay of the voice line-up, however, is more analogous to a photo-array identification. *See United States v. Otero-Hernandez*, 418 F.Supp. 572,

---

2. Two recent cases have dealt with other aspects of pretrial voice identifications. In *Buzbee v. State*, 58 Md.App. 599, 473 A.2d 1315, *cert. denied*, 300 Md. 794, 481 A.2d 239 (1984), a pretrial voice identification over the phone by a rape victim was allowed into evidence, however, no right to counsel issue was raised. 58 Md.App. at 611–13, 473 A.2d 1315. In *Adams v. State*, 43 Md.App. 528, 406 A.2d 637 (1979), *aff'd*, 289 Md. 221, 424 A.2d 344 (1981) this Court found that a visual line-up which incorporated a voice identification was sufficiently reliable under the totality of the circumstances presented there. 43 Md.App. at 542–43, 406 A.2d 637.

3. Several courts have found no right to have counsel present for various forms of pretrial voice identifications. *See United States v. Amrine*, 724 F.2d 84, 86–87 (8th Cir.1983) (playing of video tape of a visual and voice line-up; tape available to "reconstruct"); *United States v. Thomas*, 586 F.2d 123, 132–34 (9th Cir.1978) (witness identification of voice recorded in wiretap not critical stage); *United States v. Kim*, 577 F.2d 473, 481 (9th Cir.1978) (same); *United States v. Dupree*, 553 F.2d 1189, 1192 (8th Cir.1977) (tape of voice line-up, analogy to photo-array); *United States v. James*, 494 F.2d 1007, 1024–25, *cert. denied*, 419 U.S. 1020, 95 S.Ct. 495, 42 L.Ed.2d 294 (1974) (witness identification of voice from wiretap recording); *United States v. Suarez*, 553 F.Supp. 345, 347 (S.D.Fl.1982) (taking of voice exemplar, analogy to handwriting exemplar); *United States v. Otero-Hernandez*, 418 F.Supp. 572, 574–75 (M.D.Fl.1976) (taped voice spread, analogy to photo-array). Other federal courts and state decisions have required counsel presence at voice identifications. *See United States v. Patton*, 721 F.2d 159, 161–62 (6th Cir.1983) (analogy to visual line-up, voice exemplar taken over phone); *United States v. James*, 496 F.Supp. 284, 288 (W.D.Okl.1977) (right to counsel's presence at voice identification, but waived); *Thomas v. Leeke*, 393 F.Supp. 282, 285–286 (D.S.C.1975) (voice show-up, if Sixth Amendment right to counsel attached, right to have present); *People v. Reese*, 121 Cal.App.3d 606, 612–13, 175 Cal. Rptr. 214 (1976) (live voice line-up, analogy to visual line-up); *People v. Thomas*, 44 Mich.App. 649, 205 N.W.2d 604, 607–08 (1979) (playing of tape of defendant's voice, analogy to visual line-up). *See generally* Annot., 24 A.L.R.3d 1261 (1969, 1985 Supp.); Sobel, *Eyewitness Identification: Legal Practice & Problems*, § 5.6 at 5–32 to 333 (1984).

574–75 (M.D.Fl.1976). As in photo-array cases, the defendant is not present, so confrontation is not a problem, and the procedure is capable of exact repetition, so that defense counsel can later review it. *Otero-Hernandez,* 418 F.Supp. at 574–75. *See Ash,* 413 U.S. at 317–18, 93 S.Ct. at 2577. As stated in *United States v. Otero-Hernandez,*

> The court observes that a tape recording, [of a voice line-up], like a photograph, has a degree of permanence which would permit counsel to effectively reconstruct the out-of-court session during a trial confrontation. Any indication that the out-of-court procedure was suggestive of defendant or was otherwise conducted in an improper manner can be tested and resolved by adversary proceedings at trial.

> ⸰    *    *    *    *    *

> Accordingly, this court concludes that a voice spread is functionally equivalent to a photo spread rather than a line-up. Therefore, there is no constitutionally mandated requirement that defendant's counsel be present or invited at the time such an out-of-court identification is made.

418 F.Supp. at 575 (citations omitted).

■ We adopt the reasoning of *United States v. Otero-Hernandez* and hold that a criminal defendant has no right to have counsel present at a replay of a voice line-up.

## B.

### *Exclusion of Evidence of Visual Line-Up Guidelines*

Montgomery County Detective Wayne Grant testified at trial about the procedure utilized in the pretrial voice identification. During cross-examination appellant's trial counsel asked:

> If you have been setting up a photographic line-up, do your regulations or training materials, in-service training materials indicate the number of individuals that should be in one of those line-ups?

The trial court sustained the State's objection based on lack of relevance. At the ensuing bench conference, the appellant's counsel pursued the point:

THE COURT: The guidelines have no bearing on whether or not it is a proper line-up.

MS. KOVACH: [Appellant's trial counsel]: No, but it is some background as to what the jury could use for a parameter.

THE COURT: The jury uses common sense. The jury observes what in fact happened. They are the ones that determine whether or not it was fair and whether or not she is accurate.

In *State v. Cox*, 298 Md. 173, 468 A.2d 319 (1983) the Court of Appeals stated:

[C]ross-examination will not be permitted on matters that are immaterial or irrelevant to the issue being tried. In this regard, the trial judge plays a significant role; for he must balance the probative value of an inquiry against the unfair prejudice that might inure to the witness. Otherwise, the inquiry can reduce itself to a discussion of collateral matters which will obscure the issue and lead to the fact finder's confusion.

298 Md. at 179, 468 A.2d 319 (citations omitted). Here, the judge acted within the broad discretion afforded him when he determined that evidence of police regulations regarding visual line-ups was irrelevant to the voice line-up issue.

■ Appellant's reliance on *Bailey v. State*, 63 Md.App. 594, 493 A.2d 396 (1985) is not persuasive. In *Bailey* this Court interpreted *Eley v. State*, 288 Md. 548, 419 A.2d 384 (1980) to establish the proposition that a defendant may show that better evidence would have been available, if the State had followed normal procedures. 63 Md.App. at 609, 493 A.2d 396. Here, however, the "normal procedure" which the defendant sought to introduce did not pertain to the challenged voice identification, but rather to visual photographic line-ups. No "normal procedures" for voice identification were proffered, and, in fact, Detective Grant

testified that specific guidelines for voice-identification did not exist. While it is arguable that standard photo line-up procedures might be somewhat analogous, their admission in this case was properly within the trial court's discretion.

### C.

*Exclusion of Remainder of Article Read at Voir Dire*

In the *voir dire* of appellant's voice identification expert witness, Brian Kleper, the prosecutor read a passage from an article co-authored by the witness:

Q. MR. DEAN: [The Assistant State's Attorney] Well, would it be fair to say this statement: Finally it must be stressed that virtually all research on the oral perceptual approach to speaker identification has been carried out under laboratory conditions, a situation that makes it difficult to generalize to the forensic model.

Is this a fair statement as well?

A. Yes, sir. If I am not mistaken, I believe that that is from an article that I wrote.

\*    \*    \*    \*    \*    \*

MR. DEAN: Okay. I object to any further testimony.
THE COURT: I will allow it, on some limited testimony, with regard to certain factors.

■ Defense counsel unsuccessfully sought to introduce the remainder of the document the prosecutor read. Appellant contends that it was error to allow the prosecution to read part of a document to the jury and not allow appellant to introduce the balance of the document. The document, however, was not read to the jury as evidence, but in the *voir dire* qualifying Mr. Kleper. The "rule of completeness" therefore does not apply. *See Bowers v. State*, 298 Md. 115, 132–35, 468 A.2d 101 (1983).

■ In addition, the issue is not properly preserved. There was no proffer of what the remaining portion of the document contained. With nothing either in the record or appellant's brief to support factually a contrary conclusion,

we must defer to the "reasonable discretion of the trial judge," 298 Md. at 135, 468 A.2d 101, not to allow the balance of the paragraph to be read.

## D.

### *Scope of the Testimony of Appellant's Voice Identification Expert Witness*

Appellant does not challenge the reliability or suggestiveness of the voice identification on due process grounds, but argues that the trial court erred in precluding the scope of the testimony of Brian Kelper, the defense's voice identification expert. The trial court allowed the expert to testify about general principles of voice identification, but did not allow proffered testimony as to specific defects of the voice identification procedure utilized in this case.

The trial court allowed Mr. Kleper to testify generally as to voice identification, including a detailed listing of nine factors which affect its reliability. Appellant's trial counsel then attempted to question Mr. Kleper as to specific problems with the voice line-up in this case and the proper administration of voice line-up procedures generally:

> From the standpoint of past research in this area for speaker identification, is there any variable that you use in—or would use factors in setting up this type of thing?

> MR. DEAN: Objection.

> THE COURT: Sustained.

Defense counsel continued to press the point at an ensuing bench conference:

> MS. KOVACH: [Appellant's counsel] Well, I was going to ask him, basically, revolving around voice lineup situations, what some of the hazards are in considering the factors that he has presently gone into.

> THE COURT: Well, I understood that those were all [the] hazards.

> MS. KOVACH: Well, they are all hazards, Your Honor. No, but going into the specifics of some of the hazards, meaning the number of individuals who are in a particular

lineup. And how that affects the validity of the identification.

THE COURT: Sustained.

MR. DEAN: Thank you.

THE COURT: That is the jury's determination.

\* \* \* \* \* \*

MS. KOVACH: Would Your Honor allow me to go into, what is the scientific literature of the accuracy of voice identification?

THE COURT: No, the reliability of this identification is a question for the jury, not something the witness can testify to.

The witness has testified, and may testify as to factors, which influenced an identification. The jury will hear the identification itself, the voices, on the tape, and they will be aware of the factors. So there is no need for him to tell them what they are.

\* \* \* \* \* \*

MS. KOVACH: I know, but he could expound upon it a bit further.

\* \* \* \* \* \*

THE COURT: No, I will not permit that, because there have not been any tests regarding the Court's identification of lineups, themselves.

Subsequent cross-examination of Mr. Kleper revealed that he had no specific experience in analyzing, conducting or studying voice line-ups used in criminal investigations.

In *Stebbing v. State,* 299 Md. 331, 473 A.2d 903, *cert. denied,* —— U.S. ——, 105 S.Ct. 276, 83 L.Ed.2d 212 (1984) the Court of Appeals set forth the test for appellate review of exclusion of expert testimony.

'[T]he admissibility of expert testimony is a matter largely within the discretion of the trial court, and its action in admitting or excluding such testimony will seldom constitute a ground for reversal. It is well settled, however, that the trial court's determination is reviewable on ap-

peal, and may be reversed if founded on an error of law or some serious mistake, or if the trial court has clearly abused its discretion.' ... A trial judge has discretion to determine whether proffered opinion evidence of questionable relevance will be sufficiently helpful to the jury to justify an excursion into the subject through direct, cross and redirect.

299 Md. at 350, 473 A.2d 903, (*quoting Raithel v. State*, 280 Md. 291, 301, 372 A.2d 1069 (1977)) (other citations omitted).

■ We find that the trial judge was within his discretion in restricting Mr. Kleper's expert testimony. Mr. Kleper was allowed to testify about factors which the jury could apply to the voice identification process used in this case. Since Mr. Kleper had no experience in applying his expert knowledge to voice line-ups, the trial court's decision to allow the jury to hear only standards was not an abuse of discretion.

■ Appellant further contends that the trial court erred in ruling that an expert may not provide evidence which states an opinion on a question which must be answered by the jury. Expert opinion which will aid the trier of fact is admissible even on issues of "ultimate fact." *Cider Barrel Mobile Home v. Eader,* 287 Md. 571, 584, 414 A.2d 1246 (1980). The trial court's statements to the contrary were in error. We, however, interpret the trial court's desire to let the jury hear only the standards and apply them to reflect its finding that further expert testimony would not in fact have aided the jury. Also, since there was evidence that no experiments have been performed on voice line-ups, there was no scientific basis for further expert testimony on this issue under the "scientific community" standard set forth in *State v. Collins,* 296 Md. 670, 680–81, 464 A.2d 1028 (1983).

## II.

### Sequestration of State's Expert Witness

At trial, appellant presented expert testimony that a sperm swabbing taken from the victim's vagina after the

rape was inconsistent with a sperm sample provided by appellant. In rebuttal the State presented Dr. Dickman as an expert witness to refute the variance between the swabbing sample and the appellant's sperm. Upon first learning of the State's rebuttal expert, during the defense case, a bench conference occurred wherein defense counsel objected to the expert's testimony based on violation of the sequestration order. The court overruled the objection. Appellant's counsel then proceeded with the defense case.

Later, the State called Dr. Dickman to rebut the testimony of appellant's expert. At a bench conference defense counsel objected:

MS. KOVACH: Your Honor, I am going to object to the use of this witness, because I was [not] aware of the doctor's name until today, or later yesterday afternoon, or whenever it was. I did not get the proper notice as far as being able to talk to the witness or any report from this witness.

THE COURT: Well, it is my understanding he just got the witness, and he did not know yours. Let us stop the game playing. I have not seen anything untoward by either counsel that is improper.

■ Before this Court, appellant asserts that since the State's rebuttal expert was allowed to be present in the courtroom, during testimony, the sequestration order was violated and the witness should not have been allowed to testify. Appellant does not raise any discovery violation grounds as asserted at trial. Appellant has not preserved the sequestration issue for appeal because the objection was not renewed when Dr. Dickman was actually called and no continuing objection was noted originally. We shall not reach the issue since appellant does not argue before us the issue he preserved and waived the issue he argues. Rule 4–322(c); Rule 1085. *See also vonLusch v. State,* 279 Md. 255, 263, 368 A.2d 468 (1977) (appellant bound on appeal to specific grounds of objection raised at trial).

### III.

### *Reading Cases to Jury*

Appellant's final argument is that the trial court, over objection, improperly allowed the prosecutor in closing argument to read to the jury passages from two reported Maryland appellate cases. The trial court ruled counsel could read cases to the jury as long as the law was consistent with the instructions. The prosecutor indicated that he did not dispute the instructions as given, and read the first excerpt. Later in rebuttal, the prosecutor read another case excerpt over a second objection.

The first excerpt was from *Pressley v. State*, 295 Md. 143, 148, 150, 454 A.2d 347 (1983) (the first passage from *Pressley* was quoting jury instructions affirmed in that case; the second passage was from *Lampitt v. State*, 34 Wyo. 247, 267–68, 242 P. 812 (1926) ):[4]

MR. DEAN: Let me see where I was. I was reading you a passage about circumstantial evidence. 'It is not necessary that the circumstantial evidence exclude every possibility of the defendant's innocence *before producing* [or produce] absolute certainty in the minds of the jury to be satisfied beyond a reasonable doubt *that the* [of each] link in the chain of circumstances relied upon to establish the defendant's guilt.'

And it goes on the next page, and they quote from a case on page 150 as follows. In this particular quote what they are doing is discussing, what is known as the cable theory of circumstantial evidence. You might hear of the chain theory. You might hear of the cable theory....

On page 150 the quote read as follows: 'Circumstantial evidence is not like a chain which falls when its weakest *links are* [link is] broken, but *it* is like a cable. The strength of the cable ... does not depend upon one

---

**4.** In setting forth the case excerpts read at trial, we quote from the trial transcript. Where the prosecutor misquoted the cases the incorrect words are italicized, and are followed in brackets by the correct language.

strand but is made up of a union, and combination of the strength of all *of the* [its] strands. No one wire in *a* [the] cable [that] supports the suspension bridge across Niagra Falls could stand much weight, but when these different strands are all combined together, they support a structure which is capable of withstanding the weight of the heaviest engines and trains. We therefore think it is erroneous to speak of circumstantial evidence as depending on links. *But* [,for] the truth is that in cases of circumstantial evidence, each fact relied upon is simply considered as one of the strands and all of the facts relied upon can be treated as a cable.'

The second case excerpt was from *Roeder v. State,* 4 Md.App. 705, 709, 244 A.2d 895 (1967), *cert. denied,* 252 Md. 732 (1969) (*quoting* from *Tasco v. State,* 223 Md. 503, 510–11, 165 A.2d 456 (1960), *cert. denied,* 365 U.S. 885, 81 S.Ct. 1036, 6 L.Ed.2d 195 (1961) ):

MR. DEAN: 'Proof of guilt beyond all doubt has never been required, even in the most serious criminal cases. The trier of fact in a criminal case is enjoined by law to give due course to the presumption of innocence, and then to proceed cautiously in weighing the evidence.

But he is not commanded to be naive and to believe without scrutiny every glib suggestion or farfetched fairytale, whether emanating from the State or the defense. An indispensible ingredient in judgment, in Court as well as out of it, is a modicom of common sense. To prove guilty beyond a reasonable doubt, it is not necessary that every conceivable miraculous coincidence consistent with innocence be *made* [negatived].'

Appellant contends that the trial court erred in allowing the prosecutor to read the case excerpts to the jury because such a practice invades the province of the court to instruct the jury and the passages read were inconsistent with the instructions actually given. Our decision in *Newman v. State,* 65 Md.App. 85, 499 A.2d 492 (1985) is dispositive of this issue.

In *Newman* we held that to permit counsel to read law to the jury where no dispute exists as to the law of the crime violates the Court's mandate in *Montgomery v. State*, 292 Md. 84, 437 A.2d 654 (1981) and *Stevenson v. State*, 289 Md. 167, 423 A.2d 558 (1980). 65 Md.App. at 100–103, 499 A.2d 492. *Montgomery* and *Stevenson* held that a Maryland criminal jury is the judge of the law only where a dispute with a sound basis exists as to the proper interpretation of the law of the crime. *Montgomery*, 292 Md. at 87–89, 437 A.2d 654; *Stevenson*, 289 Md. 173–181, 423 A.2d 558. *See also Allnutt v. State*, 59 Md.App. 694, 701–04, 478 A.2d 321, *cert. denied*, 301 Md. 639, 484 A.2d 274 (1984). The trial court's instructions are therefore only advisory where such a dispute exists. *Montgomery*, 292 Md. at 89, 437 A.2d 654; *Stevenson*, 289 Md. at 180, 423 A.2d 558.

■ *Newman* teaches that counsel may argue law to the jury only where a dispute, as defined in *Montgomery* and *Stevenson*, exists as to the law of the crime. 65 Md.App. at 101, 499 A.2d 492. *See also Woodland v. State*, 62 Md.App. 503, 512–14, 490 A.2d 286 (1985); Rule 4–325(f). We interpret *Newman* to mean that where there is no dispute as to the law, counsel will not be permitted to argue law even where the argument is "consistent" with the court's instructions. Arguing law includes "stating, quoting, discussing, or commenting upon a legal proposition, principle, rule, or statute." *Bonner v. State*, 43 Md.App. 518, 524, 406 A.2d 646 (1979). Counsel are provided input as to the content of the instructions before they are given, and also may object if an instruction is not to counsel's satisfaction. Md.Rule 4–325. To allow counsel to embellish the trial court's instructions is fraught with the danger that the trial judge's binding instructions will be manipulated by counsel, resulting in the jury applying law different than that given by the trial court.

*Stevenson* defines the deliniation between matters of law for the Court and the jury:

(i) ... the jury, under Article 23, is the final arbiter of disputes as to the substantive "law of the crime," as well as the "legal effect of the evidence," and that any comments by the judge concerning these matters are advisory only; and (ii) ... by virtue of this same constitutional provision, all other aspects of law (e.g., the burden of proof, the requirement of unanimity, the validity of a statute) are beyond the jury's pale, and that the judge's comments on these matters are binding upon that body. In other words, the jury should not be informed that all of the court's instructions are merely advisory; rather only that portion of the charge addressed to the former areas of "law" may be regarded as non-binding by it, and it is only these aspects of the "law" which counsel may dispute in their respective arguments to the jury.

289 Md. at 180, 423 A.2d 558 (footnote omitted). The *Montgomery* Court further defined this distinction:

There are certain bedrock characteristics which distinguish our system from most others throughout the world and which are indispensible to the integrity of every criminal trial, to wit:

(1) The accused is presumed innocent until proved guilty by the State by evidence beyond a reasonable doubt.

(2) The State has the burden to produce evidence of each element of the crime establishing the defendant's guilt.

(3) The defendant does not have to testify and the jury may infer no guilt because of his silence.

(4) The evidence to impeach the defendant bears only on his credibility and may not be used to prove the substance of the offense.

(5) The evidence is limited to the testimony (and reasonable inferences therefrom) and the exhibits admitted into evidence.

(6) Evidence does not include the remarks of the trial judge nor the arguments of counsel.

> Instructions on these matters are not "the law of the crime;" they are not advisory; and they cannot be the subject of debate by counsel before the jury. They are binding.

292 Md. at 91, 437 A.2d 654.

In the case *sub judice* the prosecutor argued the legal concepts of reasonable doubt and circumstantial evidence. Under *Montgomery* and *Stevenson* neither of these areas is subject to dispute as the law of the crime, and the trial court's instructions were therefore binding. *Cf. Lewis v. State*, 285 Md. 705, 724, 404 A.2d 1073 (1979). The due process requirement of reasonable doubt is expressly listed as not being part of the law of the crime subject to dispute, and we hold that an instruction defining circumstantial evidence is in that category. The definition of circumstantial evidence applicable in every case is within the court's province; the jury only decides how to apply the facts of a particular case to the concept. The trial court therefore erred in allowing the prosecutor in closing argument to argue law explaining the concepts of reasonable doubt and circumstantial evidence because these areas are not part of "the law of the crime" subject to dispute.[5] We must now decide if the prosecutor's improper argument constitutes reversible error.

In determining whether the error was harmless, we ask the following: absent the prosecutor's improper reading of the law to the jury, is it clear beyond a reasonable doubt that the jury would have returned a verdict of guilty? *See United States v. Hastings*, 461 U.S. 499, 510–11, 103 S.Ct. 1974, 1981, 76 L.Ed.2d 96 (1983); *Woodland*, 62 Md.App. at 517, 490 A.2d 286. *See also Spence v. State*, 296 Md. 416, 425 n. 2, 463 A.2d 808 (1983); *Huffington v. State*, 295 Md. 1, 16, 452 A.2d 1211 (1982); *Dorsey v. State*, 276 Md. 638,

---

5. We note that even if the prosecutor had attempted to argue aspects of the law within "the law of the crime" category error would still be present because the prosecutor expressly stated there was no dispute as to the court's instructions.

653, 350 A.2d 665 (1976); *Garrett v. State*, 59 Md.App. 97, 107, 474 A.2d 931 (1985). The Court in *Wilhelm v. State*, 272 Md. 404, 326 A.2d 707 (1974) analyzed improper argument as follows:

'It is fundamental to a fair trial that the prosecutor should make no remarks calculated to unfairly prejudice the jury against the defendant.... On the other hand, the fact that a remark made by the prosecutor in argument to the jury was improper does not necessarily compel that the conviction be set aside. The Maryland Rule is that unless it appears that the jury were actually misled or were likely to have been misled or influenced to the prejudice of the accused by the remarks of the State's Attorney, reversal of the conviction on this ground would not be justified.'

272 Md. at 415–16, 326 A.2d 707 (*quoting Reidy v. State*, 8 Md.App. 169, 172, 259 A.2d 66 (1969)) (other citations omitted). *See also Poole v. State*, 295 Md. 167, 185, 453 A.2d 1218 (1983).

The *Wilhelm* Court continued to state that the applicable test for prejudice is whether the reviewing Court can say "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." 272 Md. at 416, 326 A.2d 707 (*quoting Gaither v. United States*, 413 F.2d 1061, 1079 (D.C.Cir.1969)) (other citations omitted).

The Court then set out three factors to be considered in determining whether a prosecutor's remarks prejudiced the defendant: first, the closeness of the case; second, the centrality of the issue affected by the error; and third, the steps taken by the trial judge to mitigate the effects of the remarks. 272 Md. at 416, 423–24, 326 A.2d 707. *See also Woodland*, 62 Md.App. at 517, 490 A.2d 286; *Curry v. State*, 54 Md.App. 250, 257, 458 A.2d 474 (1983).

In the context of the case *sub judice*, we must determine whether, in light of the evidence presented and

the instructions given, the jury would have reached the same conclusion in the absence of the prosecutor's improper argument. The case excerpt read focused on the concept of reasonable doubt. The trial court's instructions on reasonable doubt, in relevant part, provided:

Now, the State, however, is not required to prove the defendant's guilty beyond all doubt or to mathematical certainty. Nor is the State required to negate every conceivable circumstance of innocence.

\* \* \* \* \* \*

Beyond a reasonable doubt and to a moral certainty, ... it is a doubt founded on reason, reasonable in your minds. So it is not a fanciful doubt, nor whimsical or capricious doubt.

The case excerpt the prosecutor read on this issue contained language very similar to the trial court's instructions and therefore we conclude beyond a reasonable doubt that the reading of the case law concerning reasonable doubt was harmless error.

The excerpt on circumstantial evidence, however, does enhance the trial court's explanation of that concept. The trial court's instruction on this issue provided, in relevant part:

Circumstantial evidence is that which proves the facts and issues indirectly by the proof of a chain of facts and circumstances from which an inference may arise as to the facts in issue.

Now, a conviction may be based solely upon circumstantial evidence or it may be based upon direct evidence or it may be a combination of circumstantial and direct evidence.

No greater degree of certainty is required when the evidence is circumstantial than when it is direct. In either case you must be satisfied beyond a reasonable doubt that the defendant is the one that committed the offense.

The trial court then went on to give examples of both direct and circumstantial evidence. At no point did the court relate the "cable theory" of circumstantial evidence or seek to define more explicitly the relationship of one item of circumstantial evidence to the whole body of circumstantial evidence.

Applying the *Wilhelm* factor of closeness of the case, we recognize that the State's case was heavily supported by circumstantial evidence and therefore the jurors' grasp of the concept was crucial. Also, the trial court did not consider the reading of the excerpt to be an error so it in no way attempted to mitigate the effect of the error, and the court's instructions were weak in describing the role of counsel's argument which, if stronger, could have minimized the possible influence of the improper argument. *Wilhelm* also stresses, however, that in evaluating improper argument the reviewing court must consider whether the jury was likely to have been misled or influenced to the prejudice of the accused. 272 Md. 415–16, 326 A.2d 707. *See Poole*, 295 Md. at 185, 453 A.2d 1218.

Here, the prosecutor expanded the concepts of law presented by the court's instructions by reading correct statements of Maryland law which defined the court's binding instructions in more detail. The prosecutor did not go beyond the law of the case by presenting argument which substantively altered the binding instructions, but merely helped define the concept of circumstantial evidence. The improper argument, in defining the law of the case as manifested by the trial court's instructions, cannot be said to have misled or caused influence to the prejudice of the accused. The jury would have applied the same concepts of the law even if the prosecutor had not read the case law on circumstantial evidence. Upon our review of the entire record, we conclude beyond a reasonable doubt that, even in the absence of the prosecutor's improper argument, the jury would have returned the same verdict. The result in *this* case should not be taken to mean that all future error of this genre will result in affirmance. This result is based

on the facts of *this* case and is not either an invitation to prosecutors to embellish improperly the trial court's binding instructions by reading case law or to trial courts to permit such improper argument.

JUDGMENT AFFIRMED;

COSTS TO BE PAID BY APPELLANT.