GRIFFIN, Chief Judge.
The State of Florida appeals an order granting a motion to suppress, which we treat as a petition for writ of certiorari.[1]
Robert B. Trottman was charged by information with kidnaping, sexual battery by the use of force and violence likely to cause serious personal injury, and armed burglary. He filed a motion to suppress a voice identification made by the victim during a pre-arrest interview at the Seminole County Sheriffs Office on January 20, 1996, as well as information obtained during a later interview that same day. Among the grounds raised in the motion and/or at hearings was that the identification had been obtained in violation of defendant’s Miranda[2] rights and of his right to counsel.
The record of the suppression hearing shows that Trottman lives in Daytona Beach, and is employed as a contract operator of a Daytona Beach Chick-Fil-A. Early in 1996, Trottman emerged the sole suspect in a sexual battery committed in Seminole County. Officers from Seminole County obtained a warrant to search Trottman’s residence, and traveled to Daytona Beach to execute the warrant on January 20, 1996. While the warrant was being executed, Trottman apparently called home to speak with his wife and learned about the warrant. He returned home and spoke with several officers, including Investigators Walters, Parker, and Seeka. At some point during these conversations, Trottman was advised by Officer Walters that he did not have to talk to her or to other sheriffs personnel. He was also told that he was not under arrest.
Trottman was asked by Investigator Seeka if he would accompany them to the Seminole County Sheriffs Department for the purposes of an interview and to take a computer voice stress analysis [“CVSA”]. Trottman agreed, and was transported by police car to the Seminole County Sheriffs Department by Investigator Parker, ostensibly because both of his vehicles were being searched by police and he had no other transportation.
Upon arrival, Trottman was taken into an interview room, which was apparently equipped with both audiotape and videotape equipment. While Trottman waited for officers, a female deputy came into the room where Trottman was waiting. The following exchange occurred:
[TROTTMAN]: You know, whatever I’ve said, it hasn’t been adequate, so I think its [sic] best I see an attorney in here.
[FEMALE DEPUTY]: Well, do you want to make a call?
*583 [TROTTMAN]: Do you have a phone book? I’d like to do some research if I could; to find someone.
[FEMALE DEPUTY]: If you want, you can call the Public Defender here.
The female deputy left the room. Trottman assumed she had gone to get a phone book.
While Trottman waited, Deputy Sheriff Harriet and Lieutenant Thorp entered the interview room, where they engaged in generalized conversation with Trottman. Most of this conversation concerned Chiek-Fil-A. The conversation was taped. When the victim arrived at the Seminole County Sheriffs Office, she was taken into the monitoring room where she listened to the conversation and identified Trottman as the perpetrator.
Investigator Irwin then met with Trottman for the purpose of administrating the CVSA. Trottman signed a written consent form pri- or to taking the CVSA. Irwin said that Trott-man was reluctant to sign the form when he was first presented with it, so Irwin went out to speak with Investigator Parker. Parker then came and spoke with Trottman. Trott-man agreed to the CVSA after being told that it would not be admissible as evidence and/or that it could not be used against him. Irwin then administered the CVSA. Trott-man made no further request for counsel.
Once the CVSA was completed, Parker met with Trottman for the purpose of conducting an interview. Parker claims that he read Trottman his Miranda rights before the interview and had him sign a card acknowledging those rights. However, the card itself was apparently lost by investigators. Parker apparently conducted a non-taped interview of Trottman, and then conducted a videotaped interview. Parker said that Trottman was not in custody when either interview took place, and that he told Trott-man several times that he was free to leave. However, at some time during the course of the interview Investigator Seeka came in and told Trottman that he was being detained because he had been identified by the victim.
The lower court granted Trottman’s motion to suppress, finding that Trottman had invoked his right to an attorney shortly after his arrival at the station and that, therefore, investigators violated his constitutional rights by continuing to talk to him so that the victim could hear his voice. We reverse.
On appeal, the essence of the state’s argument is that the sound and/or tone of Trott-man’s voice is not testimonial in nature, and is therefore not subject to the protections of the Fifth Amendment. Trottman contends that the victim’s identification of his voice, and all subsequent procedures and/or proceedings, must be suppressed in that the trial court found that he had invoked his right to counsel at the outset. Trottman insists that, having asked to speak to an attorney, all communication was required to cease.
It appears clear that compelling a suspect to disclose the sound of his voice does not violate the Fifth Amendment protection against self-incrimination.[3] Schmerber v. California, 384 U.S. 757, 763-64, 86 S.Ct. 1826, 1832, 16 L.Ed.2d 908 (1966), indicated in dicta that an accused could be com *584 pelled to “speak for identification” without violating the Fifth Amendment. A number of cases have so held following Schmerber. In United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), the Court held that an accused’s privilege against self-incrimination was not violated by a lineup in which the accused was required to wear strips of tape on his face and to speak the words allegedly uttered by the robber. The court explained:
[C]ompelling Wade to speak within hearing distance of the witnesses, even to utter words purportedly uttered by the robber, was not compulsion to utter statements of a testimonial nature; he was required to use his voice as an identifying physical characteristic, not to speak his guilt.
388 U.S. at 221, 87 S.Ct. at 1929.[4]
Similarly, in United States v. Dionisio, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973), the Court held that a suspect could be compelled to give voice exemplars for use by the grand jury. The exemplars were apparently sought for the purposes of identifying persons heard on other tapes supplied to the grand jury. The court found that requiring the suspects to produce the exemplars or be held in contempt did not violate the suspect’s Fifth Amendment rights, noting that “[t]he voice recordings were to be used solely to measure the physical properties of the witnesses’ voices, not for the testimonial or communicative content of what was to be said.” 410 U.S. at 7, 93 S.Ct. at 768. These cases demonstrate that the Fifth Amendment privilege against self-inciimination does not protect a suspect from disclosure of the sound or tone of his voice.[5] Here the communication directed at appellant for the purpose of obtaining a voice exemplar was not interrogation.
Certiorari GRANTED; order QUASHED.
HARRIS and PETERSON, JJ., concur.

. This order does not appear to be appealable under Florida Rule of Appellate Procedure 9.140(c)(1)(B) as a “search or seizure.” See State v. Amagada, 508 So.2d 1247 (Fla. 3d DCA 1987), decision quashed on other grounds, 518 So.2d 918 (Fla.1988).

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. This case appears to have been decided below on the basis of the Fifth Amendment, which is the issue we address in the body of our opinion. We have, however, considered the right to counsel under the Sixth Amendment of the Federal Constitution and Article I, Section 16 of the Florida Constitution. We conclude that defendant had no Sixth Amendment or Section 16 right to counsel at this stage of the investigation. See United States v. Oriakhi, 57 F.3d 1290 (4th Cir.), cert. denied, - U.S. -, 116 S.Ct. 400, 133 L.Ed.2d 319 (1995); United States v. Ash, 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973). See also United States v. Amrine, 724 F.2d 84, 86-87 (8th Cir.1983); United States v. Thomas, 586 F.2d 123, 132-34 (9th Cir.1978); United States v. Kim, 577 F.2d 473, 481 (9th Cir.1978); United States v. Dupree, 553 F.2d 1189, 1192 (8th Cir.1977), cert. denied, 434 U.S. 986, 98 S.Ct. 613, 54 L.Ed.2d 480 (1977); United States v. James, 494 F.2d 1007, 1024-25 (D.C.Cir.1974), cert. denied, 419 U.S. 1020, 95 S.Ct. 495, 42 L.Ed.2d 294 (1974); United States v. Otero-Hernandez, 418 F.Supp. 572, 574-75 (M.D.Fla.1976); United States v. Akgun, 19 M.J. 770 (C.M.A.1984), review granted in part, 20 M.J. 379 (C.M.A.1985), and judgment affirmed, 24 M.J. 434 (C.M.A.1987); White v. State, 66 Md.App. 100, 502 A.2d 1084 (1986); State v. Ferguson, 391 N.W.2d 172 (N.D.1986); Strong v. State, 805 S.W.2d 478 (Tex.App.1990). Further, as to the request for counsel, it is very close to the equivocal request for counsel deemed insufficient in Davis v. United States, 512 U.S. 452, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994).

. Wade has been followed by a number of federal courts which have held that the repetition of potentially incriminating words is not the kind of compelled communication or disclosure of incriminating evidence prohibited by the self-incrimination clause of the Fifth Amendment. Burnett v. Collins, 982 F.2d 922, 927, n. 5 (5th Cir.1993) (compelling utterance of robber's words before jury for identification purposes did not elicit testimony); United States v. Domina, 784 F.2d 1361, 1371 (9th Cir.1986) (compelling utterance of robber's words before jury for identification purposes does not violate self-incrimination principles), cert. denied, 479 U.S. 1038, 107 S.Ct. 893, 93 L.Ed.2d 845 (1987).

. This principle was recently reiterated by the United States Supreme Court in Pennsylvania v. Muniz, 496 U.S. 582, 110 S.Ct. 2638, 110 L.Ed.2d 528 (1990). In Muniz, the court considered whether compelling an arrested drunk-driving suspect to disclose the date of his sixth birthday was a "testimonial” response entitled to the protection of the Fifth Amendment. In finding that the response was testimonial, the Supreme Court explained that "to be testimonial, an accused's communication must itself, explicitly or implicitly, relate a factual assertion or disclose information.” Only then is a person compelled to be a "witness against himself.” Pennsylvania v. Muniz, 496 U.S. at 589, 110 S.Ct. at 2643 (quoting Doe v. United States, 487 U.S. 201, 210, 108 S.Ct. 2341, 2347, 101 L.Ed.2d 184 (1988)). However, the Court observed that requiring a suspect to reveal the physical manner in which he articulates words, like requiring him to reveal the physical properties of the sound of his voice by reading a transcript, does not, without more, compel him to provide a testimonial response.