*Bruce Edward Pietruszewski v. State of Maryland*
No. 209 September Term, 2018
Opinion by Meredith, J.


**CRIMINAL PROCEDURE – JURY TRIALS – PEREMPTORY CHALLENGES TO POTENTIAL JUROR – RIGHT OF COUNSEL IN CRIMINAL CASES TO STRIKE JURORS AFTER THE JUROR HAS BEEN CONDITIONALLY ACCEPTED AND SEATED IN THE JURY BOX**. Maryland Rule 4-313(b) describes two alternative procedures for exercising peremptory challenges to strike prospective jurors. If no request is made to the contrary, each party shall exercise its challenges simultaneously by striking names from a copy of the jury list. But, at the request of any party, the court shall employ a procedure of "alternating challenges," pursuant to which qualified venire persons are called forward one at a time, and each party states whether the juror is challenged or accepted, alternating which party announces its position first. Rule 4-313(b)(3) further provides that, when the alternating challenges procedure has been utilized, then, after the required number of qualified jurors has been called, a party who has any remaining peremptory challenges may strike jurors from the box up until the time the first alternate is called or the jury is sworn. A trial court's refusal to permit counsel to strike jurors from the box pursuant to Rule 4-313(b)(3) is an error that is reviewed pursuant to the harmless error standard.

**CRIMINAL PROCEDURE – JURY TRIALS – CLOSING ARGUMENT OF PROSECUTOR – SHIFTING BURDEN OF PROOF – COMMENT ON CREDIBILITY OF WITNESSES CALLED BY THE DEFENDANT.** A prosecutor's closing argument may not draw the jury's attention to the failure of the defendant to call witnesses or produce evidence; such an argument impermissibly shifts the burden of proof. But, in a case in which the defendant has called witnesses, the prosecutor is permitted to attack the credibility of witnesses called by the defense, and an argument suggesting that the testimony of a witness for the defense lacks credibility because it was not supported by documents that the testimony suggested would have been reasonably available does not violate the rule against shifting the burden of proof.

Circuit Court for Baltimore County
Case No. 3-K-17-002504

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 209

September Term, 2018

_____

BRUCE EDWARD PIETRUSZEWSKI

v.

STATE OF MARYLAND

_____

Meredith,
Reed,
Sharer, J. Frederick
    (Senior Judge, Specially Assigned)

JJ.

_____

Opinions by Meredith, J.

_____

Filed: April 7, 2020

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document
is authentic.



Suzanne C. Johnson, Clerk

A jury in the Circuit Court for Baltimore County convicted Bruce Edward Pietruszewski, appellant, of committing an early morning robbery, but acquitted him of committing an assault and carrying a dangerous weapon openly with intent to injure. Pietruszewski was sentenced to a total of fifteen years, with all but eight years suspended. He presents the following issues for our review:

1.  Did the trial court err in prohibiting "striking from the box" during jury selection?

2.  Did the trial court err in permitting the prosecutor to make improper comments during closing argument?

Although we agree with the assertion that the trial court erred in failing to apply Maryland Rule 4-313(b)(3)—which provides that a party "may exercise any remaining peremptory challenges to which the party is entitled at any time before the jury is sworn[,]" up to the time "the first alternate is called"—we conclude that Pietruszewski was not prejudiced by the ruling because he utilized and fully exhausted his allotted peremptory challenges before the twelfth juror was seated in the box, and he failed to proffer how he might have used his challenges in a different manner if the trial judge had not prohibited him from striking jurors after they had been seated in the jury box. In the absence of any facts in the record that support a claim that Pietruszewski's exercise of peremptory challenges would have been any different if the court had not erred by precluding striking from the box, we are persuaded that the trial court's error was harmless in this case. With respect to the prosecutor's closing argument, we conclude that the trial court did not err in overruling the one objection that was lodged, and we decline to conduct plain error review

of the arguments as to which no objection was made during trial. Consequently, we will affirm the judgment of the circuit court.

## BACKGROUND

Shortly before 5:00 a.m. on Saturday, April 22, 2017, graduate student Brianna Doyle was walking home after working through the night at a fast food restaurant on York Road in Cockeysville. Ms. Doyle had traveled past two shopping centers when she noticed a man walking behind her. He wore a dark beanie covering his hair, but she was able to observe that he was "white," "[m]uch taller" and "thinner" than her, with "a really prominent chin" and "a slender face." He kept his hands in the pockets of his baggy sweatshirt.

Although Ms. Doyle initially concluded the man was not a threat, the man approached her from behind and said: "[W]e're past the cameras." "Give me your purse." Feeling "terrified," Ms. Doyle nevertheless asked if she could "just give" him her money "because [she] didn't want to go through the hassle of trying to replace everything." When the man agreed, she gave him her cash, which totaled a little less than $60. He turned and walked away in the opposite direction.

Fearing that the robber would return to attack her if she made a distress call, Ms. Doyle texted her mother "come and get me," and then ran the remaining few blocks to her home. Outside their residence, her mother, Bobbi Jo Goodwill, met Ms. Doyle in Ms. Goodwill's vehicle, and, after hearing about the robbery, began to drive to a police station.

As the two headed toward a police station to file a police report, Ms. Doyle saw the robber near an apartment complex, "wearing the same clothes[,]" "[w]alking the same[,]"

2

and "on the phone talking." She had "no doubt" that he was her assailant. While Ms. Doyle called 911, Ms. Goodwill "pulled up like right next to him." Ms. Doyle overheard the man say: "Where you at? I got the bread. Come on. Where you at?"

Ms. Goodwill got out of her vehicle to confront the robber, angrily asking him: "[D]id you just rob my daughter?" The two "were right in front of each other[,]" so close that she later described their proximity by saying: "[Y]ou could put a piece of paper between [our] noses." The man then reached down to retrieve "something silver." He "turned around and made [a] stabbing motion towards her chest," then dropped the item and ran.

Ms. Goodwill picked up a screwdriver that she believed was the silver item, and she got back in her car. Ms. Doyle reported the robbery to the 911 personnel. When police officers responded, Ms. Goodwill gave them the screwdriver. Although police and a K-9 officer located a possible suspect in the area, when Ms. Doyle and Ms. Goodwill came to the location to look at that person, both women agreed that he was not the robber.

Three days later, when officers came to Ms. Goodwill's apartment to present a photo array, she selected appellant's photo, recognizing his "distinctive" chin. Viewing the same array independently later that day, Ms. Doyle also identified appellant's photo as that of the robber.

At trial, appellant presented testimony from his former girlfriend and his father in support of mistaken identity and alibi defenses. Both witnesses testified that, on the night of the robbery, appellant was with them, sleeping in the same hotel room where the father had been living and the three of them had been staying.

3

During cross-examination, Pietruszewski's father admitted that he did not bring to court any receipts or records regarding that hotel stay. Nor did the father ever contact the police or prosecutor's office to report the information regarding appellant's whereabouts at the time of the robbery even though that could have been exculpatory. In addition, the State established that the hotel was located "just a couple blocks from" the restaurant where Ms. Doyle worked, which was within walking distance of the spot where the robbery occurred.

## DISCUSSION

### I. Peremptory Strikes

Pietruszewski contends that "the trial court erred in prohibiting 'striking from the box' during jury selection." He argues: "This arbitrary limitation on jury selection violated [his] right to due process as well as Maryland Rule 4-313 and impaired the use of his peremptory challenges."

The State counters: (1) that Pietruszewski did not preserve his due process challenge; (2) that the court properly exercised its discretion to control jury selection under Rule 4-313(b); and (3) that, in any event, the defense was not prejudiced by any error.

### A. Standards Governing Peremptory Challenges

"The right of both the defendant and the Government to challenge prospective jurors without assigning any reason is an ancient one, dating back, in England, to the Thirteenth Century." *Booze v. State*, 347 Md. 51, 59 (1997). "The accepted use of the peremptory challenge, as an incident to the right of trial by jury, came to the Maryland Colony with the first settlement." *Spencer v. State*, 20 Md. App. 201, 203 (1974).

4

Although not guaranteed under the United States Constitution, *see Gilchrist v. State*, 340 Md. 606, 620 n.2 (1995), or the Maryland Declaration of Rights, *see Whitney v. State*, 158 Md. App. 518, 531 (2004), the right to exercise peremptory challenges is protected under Maryland law because such strikes "play a 'vital role' in 'insuring' that 'an impartial jury is chosen.'" *Collini v. State,* 227 Md. App. 94, 101 (2016) (quoting *King v. State Roads Comm'n of State Highway Admin.*, 284 Md. 368, 370 (1979)). Parties have "wide latitude in making peremptory challenges," which they may exercise for any reason that does not discriminate on the basis of race, gender, or ethnicity. *See Gilchrist,* 340 Md. at 619; *Brice v. State*, 264 Md. 352, 366 (1972); *Collini*, 227 Md. App. at 101-02. *Cf. Ray-Simmons v. State*, 446 Md. 429, 435 (2016) ("*Batson* [*v. Kentucky*, 476 U.S. 79 (1986)] and its progeny instruct that the exercise of peremptory challenges on the basis of race, gender, or ethnicity violates the Equal Protection Clause of the Fourteenth Amendment. Excusing a juror on any of those bases violates both the defendant's right to a fair trial and the potential juror's 'right not to be excluded on an impermissible discriminatory basis.' *Edmonds v. State*, 372 Md. 314, 329, 812 A.2d 1034 (2002)." (footnote omitted)).

In *Gilchrist*, 340 Md. at 619, the Court of Appeals said:

> "The function of the [peremptory] challenge is . . . to eliminate extremes of partiality on both sides, [and] to assure the parties that the jurors before whom they try the case will decide on the basis of the evidence placed before them, and not otherwise." *Swain v. State of Alabama*, 380 U.S. 202, 219, 85 S.Ct. 824, 835, 13 L.Ed.2d 759, 772 (1965). *Accord: J.E.B. v. Alabama ex rel. T.B.*, 114 S.Ct. 1419, 1425–1426 and n. 8, 128 L.Ed.2d 89, 102 and n. 8 (1994); *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 620, 111 S.Ct. 2077, 2083, 114 L.Ed.2d 660, 673 (1991); *Vaccaro v. Caple*, 33 Md. App. 413, 416, 365 A.2d 47, 49–50 (1976).

5

Indeed, peremptory challenges "permit[ ] a party to eliminate a prospective juror with personal traits or predilections that, although not challengeable for cause, will, in the opinion of the litigant, impel that individual to decide the case on a basis other than the evidence presented." *King*, 284 Md. at 370. *See Collini*, 227 Md. App. at 101-02.

Although "the function of peremptory challenges is to *reject* rather than to *select* jurors[,]" rules governing their use reflect "the belief that the parties should have the right to exercise their rejections intelligently and strategically[.]" *Booze*, 347 Md. at 69. As this Court has recognized, "there is at least some element of indirect selection inexorably at work in the very process of elimination. The right to reject need not be exercised in the dark, but is . . . a right of informed and comparative rejection." *Spencer*, 20 Md. App. at 208.

"[I]n light of the importance of the peremptory challenge, it is not surprising that this State, since at least 1797, has . . . established orderly procedures to guarantee that litigants have a full opportunity to utilize the right." *King,* 284 Md. at 370-71 (citation and footnote omitted). Implementing those protections, Maryland Rules 4-312 and 4-313 govern peremptory strikes in a criminal case.

Under Rule 4-312(f), after conducting voir dire questioning and addressing challenges for cause, the trial judge must designate a list of qualified venire persons from whom a jury can be called:

> (f) **Peremptory challenges**. Before the exercise of peremptory challenges, the trial judge shall designate those individuals on the jury list who remain qualified after examination. The number designated shall be sufficient to provide the required number of sworn jurors, including any alternates, after allowing for the exercise of peremptory challenges pursuant to Rule 4-313.

The judge shall at the same time prescribe the order to be followed in selecting individuals from the list [*i.e.*, beginning at the top of the list or beginning from the end of the list].

Rule 4-313(a) specifies the number of peremptory strikes allotted for each party, both as to jurors and alternates. Subsection (a)(4) of Rule 4-313 also stipulates: "The additional peremptory challenges [allotted for alternate jurors] may be used only against alternate jurors, and other peremptory challenges allowed by this section may not be used against alternate jurors."

Rule 4-313(b)—which is the focus of this appeal—addresses the manner in which peremptory challenges may be exercised. Subsections (b)(1) and (b)(2) of Rule 4-313 provide two alternative procedures for exercising peremptory strikes in criminal cases. Subsection (b)(1) provides that, upon the request of any party, the clerk will call each prospective juror individually, and each party will indicate whether that juror is "challenged or accepted," alternating which party must speak first with respect to each prospective juror. Professor Byron L. Warnken comments in his treatise: "This system is almost always used." 2 BYRON L. WARNKEN, MARYLAND CRIMINAL PROCEDURE 24-1017 (2013).

In contrast, subsection (b)(2) provides that "each party shall exercise its challenges simultaneously" (and, traditionally, privately) from the list of qualified venire persons. The procedure described in subsection (b)(2) is comparable to the procedure applicable to all civil jury trials pursuant to Maryland Rule 2-512(e)(2), and is the default procedure that applies in criminal cases "[i]f no request is made for alternating challenges." Nevertheless,

Professor Warnken observes that, in criminal cases, "[t]his system is almost never used." WARNKEN, *supra*, at 24-1017.

The source of controversy in the present case arises from the provision in subsection (b)(3) of Rule 4-313 relative to the exercise of "any remaining peremptory challenges." Rule 4-313(b) provides:

(b) **Exercise of Challenges.**

(1) By alternating challenges. *On request of any party for alternating challenges, the clerk shall call each qualified juror individually in the order previously designated by the court.* When the first qualified juror is called, the State shall indicate first whether that qualified juror is challenged or accepted. When the second qualified juror is called, the defendant shall indicate first whether that qualified juror is challenged or accepted. When the third qualified juror is called, the State shall again indicate first whether that qualified juror is challenged or accepted, and *the selection of a jury shall continue with challenges being exercised alternately in this fashion until the jury has been selected.*

(2) By simultaneous striking from a list. If no request is made for alternating challenges, each party shall exercise its challenges simultaneously by striking names from a copy of the jury list.

(3) Remaining challenges. *After the required number of qualified jurors has been called, a party may exercise any remaining peremptory challenges to which the party is entitled at any time before the jury is sworn,* except that no challenge to the first 12 qualified jurors shall be permitted after the first alternate juror is called.

(Emphasis added.)

When the correct number of qualified jurors has been provisionally selected in accordance with these rules, the trial court generally asks counsel whether the jury is acceptable as assembled. Grievances about both the jury selection process and the jury as constituted should be asserted before the jury is sworn because failure to do so may

preclude appellate review. *See, e.g., Chew v. State*, 317 Md. 233, 237 n.3 (1997) ("Maryland Rule 4–313(b)(3) provides that a peremptory challenge may be made at any time before the jury is sworn."); *Parker v. State*, 72 Md. App. 610, 618 (1987) ("It is well settled in Maryland that an appellant waives any objection he may have to the jury impaneled if he fails to state his objection to, and expresses satisfaction with, the panel prior to the jury being sworn."). *But cf. Cousar v. State*, 282 Md. 125, 130 (1978) (Cousar's objection to "the court's refusal to permit inspection or discovery of the prosecutor's jury dossier" was preserved because it "was only indirectly aimed at the composition of the jury ultimately selected.").

## B. Jury Selection in This Case

Before beginning jury selection, the trial judge informed counsel that she did not intend to allow "striking from the box," prompting a preliminary objection from defense counsel, as reflected in the following colloquy:

> THE COURT: All right. I, *I typically conduct juror questioning or voir dire where the parties are required to* strike jurors that, or *exercise their peremptory challenges right at the well*, without having jurors come up to the jury box. And [defense counsel], my understanding or at least I was told that you are going to refuse to do that?
>
> [DEFENSE COUNSEL]: No. If the Judge, if you order to me, you're saying, ["]you cannot do that,["] then obviously yes, I will do it. Um, but –
>
> THE COURT: You mean, I cannot do what?
>
> [DEFENSE COUNSEL]: No. If you tell me, ["defense counsel], you cannot strike from the box,["] I will not do that. But *it's our position that, that there is, that we can use our peremptory strikes in any way that we choose, whether it be at the well or in [the] box.*

9

THE COURT:  Okay.  But, but *is it your position that the Court does not have the authority to specify the way in which you're going to utilize your peremptory challenges?*

[DEFENSE COUNSEL]:  *Yes.*  That's –

THE COURT:  Okay.  Can you cite that authority for me please?

[DEFENSE COUNSEL]:  Um, I'm just.  *I'm not aware of anything in the rule that gives the Court that authority.*

THE COURT:  Of anything in the rule that gives me that authority?

[DEFENSE COUNSEL]:  Right.

THE COURT:  Are, *are you aware of anything, any case law or any rule that would prohibit me from doing it that way?*

[DEFENSE COUNSEL]:  *I'm not aware of any case law or any* --

THE COURT:  Nor am I sir.  So, here's what we're going to do.  When the trial is finished you're going, you're going to submit to the Court a Memorandum of Law with, including any authority that you can find for that proposition, and I'll be happy to consider it in a future trials [sic].  I, if, if there's authority that says that I, I can't have you strike from the well I won't do that anymore.

[DEFENSE COUNSEL]:  I could tell the Court that *I have researched that issue, and I have not found a case*.

THE COURT:  Well, I'm going, I'm ordering you to research it again and submit a Memorandum of Law.

[DEFENSE COUNSEL]:  After the trial?

THE COURT:  Okay.

(Emphasis added.)

10

After completing voir dire questioning, the court compiled a list of individuals qualified to serve on the jury, in accordance with Rule 4-312(f). The judge then explained the process she intended to use for peremptory challenges as follows:

> THE COURT: All right. For the remaining jurors, what we're going to do is when we call your number I want [you] to *come up to the well of the courtroom and the attorneys may or may not strike you. If you're not stricken and you come up here into the jury box that means that you are selected as a juror.* All right. We'll start with Juror #4.

(Emphasis added.)

Jury selection proceeded as described. Alternating between prosecution and defense for each qualified juror called to the well, the court asked, "Is the prospective juror acceptable[?]" When an individual was accepted by both sides, the trial judge immediately instructed that juror to take a seat in the jury box.

Before the twelfth qualified juror was seated, defense counsel had used all four peremptory strikes allotted by rule in a case of this nature. *See* Rule 4-313(a). Once the State accepted the twelfth qualified juror, the court, without pause or comment, proceeded to call for peremptory challenges against alternates, as follows:

> THE COURT: 129. Is the prospective *juror* acceptable to the State?
>
> [PROSECUTOR]: Acceptable to the State.
>
> THE CLERK: Please take the next seat in the second row. 165. Is the *prospective alternate* acceptable to the Defense?
>
> [DEFENSE COUNSEL]: Respectfully move to excuse.

(Emphasis added.)

11

Defense counsel exercised peremptory strikes against the first two prospective alternate jurors called to the well, exhausting the defendant's allotment of peremptory strikes against alternates. After two alternates were seated, the judge excused the remaining members of the venire and called for the jury to be sworn, at which point defense counsel lodged an objection:

> THE COURT: All right. The two gentlemen who are left, you can go back to the Jury Assembly Room. Thank you for participating in the process. When you're ready madam clerk, please swear the jury.
>
> THE CLERK: Would all prospective jurors – all jurors –
>
> [DEFENSE COUNSEL]: I'm sorry, I'm sorry. Your Honor, may we approach?
>
> THE CLERK: I'm sorry.
>
> THE COURT: Okay. (BENCH CONFERENCE BEGINS) . . .
>
> [DEFENSE COUNSEL]: Your Honor, I'm going to object to –
>
> THE COURT: I'm sorry, I can't, I can't –
>
> [DEFENSE COUNSEL]: *I'm going to object to the seating of this jury based on the, the ruling on the peremptory strikes.*
>
> THE COURT: *Okay. **And again, do you have legal authority for that?***
>
> [DEFENSE COUNSEL]: ***No, ma'am.***
>
> THE COURT: Okay. Well, you're going to do a Memorandum of Law for me and submit it. And if, if you don't find any legal authority then say that in your memorandum.

(Emphasis added.)

After Pietruszewski was convicted, defense counsel filed a motion for a new trial on the ground that the trial court "inappropriately restricted the Defendant's use of

12

peremptory challenges to 'strike from the box.'" In support of the motion for new trial, defense counsel argued for the first time that "Maryland Rule 4-313(b)(3) squarely addresses the issue" by providing that, "[a]fter the required number of qualified jurors has been called, a party may exercise any remaining peremptory challenges to which the party is entitled at any time before the jury is sworn, except that no challenge to the first 12 qualified jurors shall be permitted after the first alternate juror is called." As construed by defense counsel, this rule provides that, "[a]fter the 12 jurors are seated 'in the box,' a party is entitled at any time to use its remaining challenges, so long as it is done before the jury is sworn[,]" but counsel acknowledged that he still "could not find case law directly construing a defendant's right to strike from the box[.]" Nevertheless, counsel argued, "such a right is at least referred to in *Chew v. State*, 317 Md. 233, 237 (1989) (footnote 3 in the text)."

The trial court denied the motion without a hearing. This timely appeal followed.

In his brief, Pietruszewski asserts two reasons why the trial court erred in refusing to permit him to strike jurors after they had been seated in the box: (1) the court "violated Appellant's right to due process," and (2) the court violated "Maryland Rule 4-313 and impaired the use of peremptory challenges." We conclude that neither argument supports reversal in this case.

### C. Due Process Claim

The State argues that Pietruszewski's due process claim "should be rejected because he failed to make any argument to support it[.]"

13

We agree that a due process challenge is not preserved. As the excerpts of the trial transcript show, when defense counsel was asked to state the legal basis for his objection to the peremptory challenge procedure described by the trial judge, counsel never mentioned due process or otherwise asserted constitutional grounds for his position. Due process was not argued to the trial court either before the jury was selected or in the motion for a new trial. Counsel did not even cite Rule 4-313(b) until he filed his motion for new trial, and he advised the court that his research had not yielded any appellate precedent to support his position. Counsel conceded in the memorandum supporting his motion for new trial that "[t]he provision and use of peremptory challenges are not provided under the United States Constitution or under the Md. Decl. of Rights. *Whitney v. State*, 158 Md. App. 519, 531 (2004)."

> Under Maryland Rule 8-131(a),
>
> [w]e usually elect to review an unpreserved issue only after it has been thoroughly briefed and argued, and where a decision would (1) help correct a recurring error, (2) provide guidance when there is likely to be a new trial, or (3) offer assistance if there is a subsequent collateral attack on the conviction.

*Conyers v. State*, 354 Md. 132, 151 (1999). Because this limitation on appellate review is particularly important for constitutional claims, "precedents recognize that constitutional issues raised for the first time on appeal, and not raised in the trial court, are not automatically entitled to consideration on the merits under Maryland Rule 8–131(a)." *Hartman v. State*, 452 Md. 279, 300 (2017). *See also State v. Raithel*, 285 Md. 478, 484 (1979) ("nothing is better settled than the principle that courts should not decide

14

constitutional issues unnecessarily"). Consequently, we will limit our review to whether the trial court committed reversible error in failing to apply Rule 4-313(b)(3).

### D. Rule 4-313(b) Claim

Pietruszewski contends that the trial court erred when, instead of proceeding by a commonly-used jury selection method that permits attorneys to "strike from the box after jurors have taken a seat in the box, the court" imposed a "one and done" procedure that prevented him from exercising peremptory strikes after qualified jurors were seated in the box. In Pietruszewski's view, the trial court's method of impaneling the jury "impaired" his "exercise of his peremptory challenges" by "violat[ing] the mandate of Maryland Rule 4-313(b)(3)" that such strikes may be "exercise[d] at any time before the jury is sworn" (up until the time the first alternate juror is called). Pietruszewski further argues: "Alternatively, the trial court's refusal to allow [him] to 'strike from the box' is an abuse of the trial court's discretion because the trial court failed to exercise any discretion" when it applied "a hard and fast rule" "for no reason other than that is what it always does[.]"

The State responds that "[t]he practice of 'striking from the box' is a permitted, but not a required, method of exercising peremptory strikes under Maryland common law[,]" because Rule 4-313(b) does not expressly "require trial courts to permit 'striking from the box.'" The State asserts: "Indeed, the Rule itself, in subsection (b)(2), permits the procedure whereby the parties simultaneously strike names from identical copies of the jury list[,]" so that "the parties exercise all of their peremptory challenges from the jury list and there are no challenges from the jury box." Moreover, the State continues, the trial court's adoption of a standard procedure for the exercise of peremptory challenges "does

15

not suggest that the judge thereby failed to exercise her discretion." *Cf. Holland v. State*, 122 Md. App. 532, 547 (1998) ("That an experienced and veteran judge may fall into predictable and identifiable sentencing habits and patterns does not mean that that judge has thereby failed to exercise discretion."). On this last point, we agree with the State that the record does not support a claim that the judge failed to exercise discretion when required to do so.

But we disagree with the State's assertion that Rule 4-313(b) does not require the trial court to permit striking from the box, at least when a party has requested that the court utilize the alternating challenges procedure described in Rule 4-313(b)(1). Indeed, subsection (b)(3) of Rule 4-313 would have no rational application under any circumstances unless it gives parties the right to strike from the box when any party has requested alternating challenges pursuant to Rule 4-313(b)(1) and either or both of the parties have unused strikes remaining "[a]fter the required number of qualified jurors has been called." [1]

In construing Rule 4-313, we place primary emphasis upon the plain meaning of its language. *See Lisy Corp. v. McCormick & Co., Inc.*, 445 Md. 213, 221 (2015) ("'[T]he principles applied to statutory interpretation are also used to interpret the Maryland Rules. Like construing a statute, to ascertain the meaning of a . . . rule of procedure we first look

---

[1] Although the issue of whether a party might exercise any unused peremptory challenges to strike jurors from the box after the procedure described in subsection (b)(2) of Rule 4-313 has been utilized to seat twelve jurors is not before us in this case, we observe that the plain language of Rule 4-313(b)(2) seems to us to preclude a second round of strikes because that subsection mandates that each party "*shall exercise* its challenges simultaneously by striking names from a copy of the jury list." (Emphasis added.)

16

to the normal, plain meaning of the language. If that language is clear and unambiguous, we need not look beyond the provision's terms to inform our analysis; . . . .'" (quoting *Duckett v. Riley*, 428 Md. 471, 476 (2012))*; Brown v. Daniel Realty Co.*, 409 Md. 565, 584-85 (2009) ("[W]e reiterate that, when interpreting the Maryland Rules, we ordinarily employ the rules of statutory construction. A cardinal principle in that regard states that if the language of a rule is clear and unambiguous, it will be applied thusly in a common-sense manner." (citations omitted)); *Booze,* 347 Md. at 58, ("we shall decide this case under the plain wording of [the Rule]").

As both Pietruszewski and the State acknowledge, striking from the box is a "long-standing" practice in Maryland. The Court of Appeals described the typical process in *Gilchrist,* 340 Md. at 611:

> After the roll of prospective jurors was called, voir dire commenced, the attorneys made their challenges for cause to the trial judge, and the stricken jurors were dismissed. The clerk then called off the names and numbers of the remaining prospective jurors one at a time, proceeding down the jury list from the top. Both sides exercised their peremptory challenges to each prospective juror immediately after his or her name was called. If a prospective juror was not challenged, that person was seated in the jury box until twelve jurors were seated. Once twelve jurors were seated in the box, the court then offered the parties a second opportunity to exercise peremptory challenges against the jurors who were already seated. If any jurors were then struck by the parties' attorneys, the process would begin again with the clerk calling off the name of the next prospective juror on the list. Jury selection continued in this fashion until twelve unchallenged jurors were ultimately seated.

A similar selection process was described in detail in *Chew,* 317 Md. at 237 (recounting that, "[w]hen twelve persons were in the box, the parties were afforded an additional opportunity to announce a peremptory challenge" (footnotes omitted)). Other

references to striking from the box appear in: *Ray-Simmons,* 446 Md. at 452 ("After the box had been filled with 12 jurors, counsel for each party proceeded to strike jurors from the box, presumably to substitute the next member of the remaining venire as a preferable juror."); *Whittemore v. State*, 151 Md. 309, 317 (1926) ("[T]he argument on appeal has taken the broader ground of a denial of the propriety of any peremptory challenges of jurors accepted and seated in the box for swearing. This practice has been followed in Baltimore City for many years, as a literal application of the common law rule that jurors may be challenged up to the time of swearing."). This method of exercising peremptory challenges affords parties an opportunity for comparative selection, complements the optional procedure for alternating strikes under Rule 4-313(b)(1), and ensures the parties' right to exercise strikes "at any time before the jury is sworn" under Rule 4-313(b)(3) by allowing backstrikes against qualified jurors who have already been accepted and tentatively seated. *See generally* 47 Am. Jur. 2d *Jury* § 205 ("'Backstriking' refers to a party's right to retract the party's acceptance and object to a juror at any time before that juror is sworn."). *See generally* C.J. Williams, *Proposing a Peremptory Methodology for Exercising Peremptory Strikes,* 54 Am. Crim. L. Rev. 277, 287-97 (2017) (describing various alternative methods of jury selection).

As the transcript excerpts quoted above show, the dispute in this case is not over the trial court's mandate that peremptory strikes must initially be exercised from the well, but over whether defense counsel could exercise any peremptory strikes after jurors were seated in the box.

Although, in our view, Rule 4-313(b)(3) clearly gives a party the right to exercise unused strikes after jurors have been seated in the jury box (but not sworn), up to the time "the first alternate is called," Pietruszewski did not bring this rule to the attention of the trial judge before the jury was sworn in his case. On the contrary, when he asserted that he wanted to reserve the right to exercise strikes after jurors were seated in the box, the court asked him: "[A]re you aware of anything, any case law or any rule that would prohibit me from doing it that way [that is, not permitting striking from the box]?" Counsel replied: "I'm not aware of any case law or any --." The court stated: "Nor am I sir." Not helping his position, defense counsel then volunteered: "I could tell the Court that I have researched that issue, and I have not found a case."

Having conceded that he knew of no authority that required the court to permit parties to strike jurors from the box, defense counsel exhausted all of his peremptory challenges before a twelfth juror was ever seated in the box. And he did nothing further to make a record of how the court's ruling in any way resulted in prejudice to the defendant. He did not renew his request to strike from the box while he still had any strikes remaining. Nor did he raise a challenge to the first twelve jurors before the court called and seated the first and second alternate jurors.

And, when counsel thereafter asserted that he was "going to object to the seating of this jury based on the, the ruling on the peremptory strikes," the court asked, "again, do you have any legal authority for that?" The answer was again: "No ma'am." Counsel made no proffer at that time regarding specific jurors that he would have challenged, or might have challenged, after they had taken a seat in the box, and counsel made no proffer

19

that he would have deferred challenging any of the jurors on whom he exhausted his peremptory strikes if the trial judge had given him the option of striking from the box. Nor has Pietruszewski *ever* asserted that there was any juror who served on his jury whom he wished he could have challenged after the first twelve jurors were seated in the box.

Under these circumstances, we are unable to conclude that Pietruszewski was in any way prejudiced by the trial court's error in failing to comply with Rule 4-313(b)(3). As it turned out, Pietruszewski did not have any "remaining peremptory challenges" to exercise pursuant to Rule 4-313(b)(3) by the time the twelfth juror was seated in the box. But counsel never made any proffer on the record that he would have exercised his allotted peremptory challenges in any different manner if the court had agreed that he could strike from the box. We conclude that the record does not support a finding that the court committed prejudicial error by failing to recognize the parties' right to exercise strikes pursuant to Rule 4-313(b)(3) after jurors were seated in the box.

We acknowledge that, as recently as our decision in 2016 in *Collini,* 227 Md. App. at 105, we quoted *Whitney,* 158 Md. App. at 532, for the proposition that "'the denial or impairment of the right to exercise peremptory strikes is reversible error without a showing of prejudice.'" But we are not persuaded that Pietruszewski's right to exercise all of his peremptory strikes was impaired in this case, and it certainly was not "denied."

In *Whitney*, we reviewed the denial of post-conviction relief in a case in which the trial judge had granted the defendant only four challenges rather than the ten to which he was entitled under the rules. Because the trial court in that case denied Whitney the opportunity to exercise six challenges to which he was entitled, we observed (although it

20

was not our holding in the case): "We are confident that, had the trial court, *over counsel's objection*, abridged Whitney's right to **the full number** of peremptory challenges, we would likely reverse and grant a new trial." 158 Md. App. at 533 (bold emphasis added, italics in original). But we also commented that **"the impairment or dilution of a litigant's peremptory strikes does not rise to the level of presumptive error or structural defect**. Such errors or defects are limited in scope and application." *Id*. at 537 (emphasis added). In the post-conviction posture of *Whitney*, we concluded that Whitney was "not entitled to reversal *per se* on structural defect grounds" even though he had been denied the opportunity to exercise six of his ten allotted challenges, *id*. at 539, and we held: "[O]n this record, we perceive no prejudice resulting from counsel's mistake that was shown to have resulted in an impairment of Whitney's right to a fair and impartial jury. Even with a jury [presumably and after the fact] not entirely in line with [Whitney's] preferences, the trial was not unreliable or fundamentally unfair." *Id*. (Internal quotation marks and citations omitted; alterations added in *Whitney*.) *See also* WARNKEN, *supra*, at 24-1017 ("Impairment of the exercise of peremptory challenges is not a structural defect and, therefore, it is subject to the harmless error rule." (citing *Whitney*, 158 Md. App. at 537)).

But, unlike the trial court's error in *Whitney*, and the similar error that was held reversible in *Walker v. State*, 224 Md. App. 659 (2015) (where the trial court granted the defendant only four strikes instead of the ten to which he was entitled), Pietruszewski was *not* denied the *full number* of peremptory strikes to which he was entitled. And he took advantage of, and exhausted, all challenges that he was entitled to exercise. Consequently,

the trial court's error did not reduce or limit the number of peremptory challenges Pietruszewski could exercise. In a case such as this, where the trial court's failure to fully comply with the procedural requirements of Rule 4-313 does not impair the number of challenges a party is able to exercise, we will not find reversible error in the absence of any hint of prejudice that was caused by the error. We conclude that the trial court's error was harmless in this case.

## II. Closing Argument

Pietruszewski argues that, during closing argument, "[t]he trial court erred in permitting the prosecutor to make improper comments" that asserted facts not in evidence and shifted the burden of proof. This assignment of error stems from the portion of the State's argument highlighted below:

> And they [Ms. Doyle and Ms. Goodwill] pick out this defendant's picture. And they don't just pick it out ["]oh, maybe this is him. I'm not sure.["] The detective told you. He testified that when he watched them come to his picture both women had physical reactions. Brianna started shaking. Bobbi Jo got so upset at seeing his picture that she actually had to, they had to take a break for a second. This wasn't a ["]I'm not sure, maybe it's him.["] You don't get those kind of reactions unless you know that's the person that just robbed you and just assaulted you. So, we know who did it. They knew who did it right away. *Defense counsel wants to talk about a screwdriver and DNA and phone records and fingerprints. This isn't CSI. We're not in a movie. We're not in a TV show. Those are investigative tools when you don't know who did something. But we know who did it. We have two women who were face to face with this person, with no reason to lie tell you that this is the man who did it. It's a red herring. And I mean, in regard to fingerprints. Well, Bobbi Jo told you she picked up that screwdriver. She had her hands all over it, and then gave it to the officer, who then had her hands all over it. Phone records. You've got to have a phone.* You've got to have a phone on ya. The officers have to recover a phone to get those phone records. *There was no phone by the time he was found.* And today the defendant parades in his girlfriend and his dad in front of you to tell you, ["]oh, it couldn't have

22

been him.  He was at a, a motel with us.["]  *They provide you with no dates. No details.  No hotel records.  Nothing.*

[DEFENSE COUNSEL]:  Objection.

THE COURT:  Overruled.

[PROSECUTOR]:  *They never went and talked to the police.  They never contacted the State's Attorney's Office.  They came here today and told you that* ["]*this is the wrong man.  They arrested the wrong man.*["]  *But did they ever tell the police that?  Did they ever tell anybody that in the last ten months?  Did they ever say any of that to anybody?  No.*  They just came in here today and said, ["]oh, yeah, yeah, he was at a motel.["]  A motel, which as we, as we heard is close to the Taco Bell that Brianna works at.  Close to, right off of Cranbrook, where this all happened.  The juror or the Judge . . . told you and she read to you the jury instruction about credibility of witnesses.  You get to use your common sense to decide who you want to believe.  If you want to believe the defendant's dad and his girlfriend with every reason in the world you know, to come in and do anything they can to make sure that their boyfriend and their son doesn't get in trouble.  Or you can listen to Brianna and Bobbi Jo.  Two women who have no, no reason to make up this story.  No reason to pick this man out other than the fact that he did it. . . .

(Emphasis added.)[2]

In Pietruszewski's view, the highlighted argument constituted both improper comment on facts not in evidence and improper burden shifting, the cumulative effect of which was to deprive him of his right to a fair trial.  He concedes that his objection raised only the burden-shifting argument, but he asks this Court to review the other remarks under the doctrine of plain error.

---

[2] Although the State asserts that the challenged remarks were "made by the prosecutor in rebuttal closing argument," the transcript shows that they occurred during the State's initial closing argument.

23

The State responds that the claim of burden shifting "is unfounded," and that the other "comments did not constitute error, much less plain error." We agree there is no basis for appellate relief.

### A. Standards Governing Closing Argument

We review a trial court's allowance of allegedly improper remarks by a prosecutor under an abuse of discretion standard. *See Whack v. State*, 433 Md. 728, 742 (2013). This Court recently summarized principles and precedent governing appellate review of closing argument as follows in *Winston v. State*, 235 Md. App. 540, 572-73, *cert. denied sub nom. Mayhew v. State*, 458 Md. 593 (2018):

> "A trial court is in the best position to evaluate the propriety of a closing argument[.]" *Ingram v. State*, 427 Md. 717, 726 (2012) (citing *Mitchell v. State*, 408 Md. 368, 380-81 (2009)). Therefore, we shall not disturb the ruling at trial "unless there has been an abuse of discretion likely to have injured the complaining party." *Grandison v. State*, 341 Md. 175, 243 (1995) (citing *Henry v. State*, 324 Md. 204, 231 (1991). Trial courts have broad discretion in determining the propriety of closing arguments. *See Shelton v. State*, 207 Md. App. 363, 386 (2012).

> "[A]ttorneys are afforded great leeway in presenting closing arguments[.]" *Degren v. State*, 352 Md. 400, 429 (1999). "'The prosecutor is allowed liberal freedom of speech and may make any comment that is warranted by the evidence or inferences reasonably drawn therefrom.'" *Id.* at 429-30. "Generally, counsel has the right to make any comment or argument that is warranted by the evidence proved or inferences therefrom; the prosecuting attorney is as free to comment legitimately and to speak fully, although harshly, on the accused's action and conduct if the evidence supports his comments, as is [the] accused's counsel to comment on the nature of the evidence and the character of witnesses which the (prosecution) produces." *Wilhelm v. State*, 272 Md. [404, 412 (1974)]; *accord Degren v. State*, 352 Md. at 430.

> While arguments of counsel are required to be confined to the issues in the cases on trial, the evidence and fair and reasonable deductions therefrom, and to arguments [of]

24

> opposing counsel, generally speaking, liberal freedom of speech should be allowed. There are no hard-and-fast limitations within which the argument of earnest counsel must be confined – no well-defined bounds beyond which the eloquence of an advocate shall not soar. He may discuss the facts proved or admitted in the pleadings, assess the conduct of the parties, and attack the credibility of witnesses. He may indulge in oratorical conceit or flourish and in illustrations and metaphorical allusions.

*Wilhelm v. State*, 272 Md. at 413; *accord Degren v. State*, 352 Md. at 430.

Even when a prosecutor's remark is improper, it will typically merit reversal only "'where it appears that the remarks of the prosecutor actually misled the jury or were likely to have misled or influenced the jury to the prejudice of the accused.'" *Lawson v. State*, 389 Md. 570, 592 (2005) (quoting *Spain v. State*, 386 Md. 145, 158-59 (2005)).

## B. Burden-Shifting

"Maryland prosecutors, in closing argument, may not routinely draw the jury's attention to the failure of the defendant to call witnesses, because the argument shifts the burden of proof." *Wise v. State*, 132 Md. App. 127, 148 (2000). As the excerpt of the prosecutor's argument quoted above shows, the prosecutor drew the jury's attention to the limited credibility of the two defense witnesses who both had a motive to lie for the defendant and who failed to bring to court any receipts or other records that could have improved the credibility of their testimony: "They provide you with no dates. No details. No hotel records. Nothing." We shall assume that defense counsel's general objection operated to preserve the burden-shifting challenge to that portion of the prosecutor's argument.

25

In addition to this preserved objection, Pietruszewski claims that the prosecutor also made an improper, albeit unchallenged, burden-shifting argument, after his single objection, when she stated:

> They [*i.e.*, the father and girlfriend of defendant] never went and talked to the police. They never contacted the State's Attorney's Office. They came here today and told you ["]this is the wrong man. They arrested the wrong man.["] But did they ever tell the police that? Did they ever tell anybody that in the last ten months? Did they ever say any of that to anybody? No. They just came in here today and said, ["]oh, yeah, yeah, he was at a motel.["]

Pietruszewski concedes that he did not object to these latter remarks, but contends that, by highlighting for the jury evidence that the defense did not present, the prosecutor made an improper argument which was prohibited by the principle that a criminal defendant is under no obligation to prove his innocence, even when he relies upon an alibi defense. *See Robinson v. State*, 20 Md. App. 450, 459 (1974). For support, Pietruszewski relies on cases holding that it was "impermissible" for a prosecutor to comment on the failure of the defense to call certain witnesses because "it effectively shifted the burden to [the defendant] to call witnesses, a burden [the defendant] did not have." *Woodland v. State*, 62 Md. App. 503, 515 (1985). Although "[t]his Court has approved of prosecutors calling attention to the failure of defendants to come forward with evidence that they promised to produce in opening statements," *Wise,* 132 Md. App. at 146 (citing *Eastman v. State*, 47 Md. App. 162, 167 (1980), and *Eley v. State*, 288 Md. 548 (1980)), Pietruszewski argues that "that did not happen in this case," because this argument was not responding to his opening statement.

The State responds that the prosecutor's argument "was a proper attempt to discredit the defense witnesses who testified and to discredit Pietruszewski's alibi, not a shifting of the burden of proof." In support, the State cites *Simms v. State*, 194 Md. App. 285, 320-21 (2010), *aff'd on other grounds*, 420 Md. 705 (2011), where this Court distinguished between permissible and impermissible argument regarding an alibi defense, as follows:

> Where a defendant testifies to an alibi and calls no additional witnesses to support it, the prosecution, by commenting on the nonproduction of corroborating alibi witnesses, is merely pointing out the weakness in defendant's case. When, however, the defendant produces no testimony to support an alibi, the prosecutor, by commenting on the nonproduction of alibi witnesses, is not exposing a weakness in defendant's case, but is rather improperly shifting the burden of proof to the defendant.

*Id.* (citation omitted).

We agree with the State that the challenged argument in this case merely pointed out the weakness in the credibility of Pietruszewski's alibi witnesses, including the lack of corroborating evidence that their testimony suggested would have been reasonably available. The prosecutor's references—both to the lack of any documentation and to the witnesses' delay in coming forward with exculpatory information before trial—were directed at the credibility of the testimony that was given by the witnesses. In contrast to *Lawson*, 389 Md. at 595, where the State improperly suggested to the jury that the defense was obligated to produce evidence showing why the State's witness might lie, in this instance, the State did not err in challenging the credibility of evidence that *was* presented by the defense. Consequently, we agree with the State's assertion that this portion of the prosecutor's argument was "a proper attempt to discredit the defense witnesses who testified and to discredit Pietruszewski's alibi, not a shifting of the burden of proof."

27

### C. Facts Not In Evidence

Pietruszewski also complains (although he did not object during the trial) that the prosecutor improperly commented on facts not in evidence by "invit[ing] the jury to draw inferences from information that was not admitted at trial." *See Spain*, 386 Md. at 156. He cites the following three portions of the argument:

- "Defense counsel wants to talk about a screwdriver and DNA and phone records and fingerprints. This isn't CSI. We're not in a movie. We're not in a TV show. Those are investigative tools when you don't know who did something. But we know who did it."

- "And I mean, in regard to the fingerprints. Well, Bobbi Jo told you she picked up that screwdriver. She had her hands all over it, and then gave it to the officer, who then had her hands all over it."

- "Phone records. You've got to have a phone. . . . There was no phone by the time he was found."

Conceding that he failed to object to any of these comments, Pietruszewski asks for plain error relief. He contends that the cumulative effect of the "multiple improper statements" amounts to a "compelling, extraordinary, exceptional or fundamental" reason to remedy improper argument that "went to the very heart of [his] constitutional rights[.]"

The State responds that "[n]one of the comments constitute error, much less plain error," because "[t]he prosecutor simply pointed out the common sense notion that fingerprinting, DNA, and phone records are important when the perpetrator is unknown," but not when he has "been identified by two witnesses who were face to face with him." Furthermore, the State asserts that the prosecutor's closing argument was "drawing on the cross-examination of Detective John Lorenz, who testified that he did not think that it was necessary to request a DNA analysis of the screwdriver in this case."

28

"Plain error is 'error which vitally affects a defendant's right to a fair and impartial trial.'" *Richmond v. State*, 330 Md. 223, 236 (1993) (citation and quotation marks omitted). Although "[t]here is no fixed formula for the determination of whether discretion should be exercised" to consider an unpreserved argument, we reserve plain error relief "for errors that are 'compelling, extraordinary, exceptional or fundamental to assure the defendant a fair trial.'" *Yates v. State*, 429 Md. 112, 130-31 (2012) (citation omitted). An appellate court's "exercise of discretion to engage in plain error review is 'rare.'" *Id.* at 131. *Accord Morris v. State*, 153 Md. App. 480, 507 (2003) (Granting plain error review "1) always has been, 2) still is, and 3) will continue to be a rare, rare phenomenon.").

Appellant's claim of prejudicial error is not persuasive, and not so compelling as to merit plain error review. The closing argument that Pietruszewski now challenges despite his failure to object at trial included suggested inferences the prosecutor urged the jury to draw from facts that *were* in evidence, including testimony that the screwdriver was handled by both Bobbi Jo Goodwill and the responding police officer, that the lead detective decided not to request DNA analysis of the screwdriver, that both victims unhesitatingly identified Pietruszewski in photo arrays, and that the police did not recover a phone when they arrested Pietruszewski days after the robbery. Under the circumstances, we are not moved to grant the extraordinary remedy of considering objections that were not raised during trial.

**JUDGMENT OF THE CIRCUIT COURT FOR BALITMORE COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**